**In re G. William WEIER, Respondent.**

No. 81394.

Supreme Court of Missouri,
En Banc.

June 29, 1999.

Sam S. Phillips, Chief Disciplinary Counsel, Jefferson City, for Informant.

James B. Deutsch, John E. Bardgett, Marc H. Ellinger, Jefferson City, G. William Weier, St. Louis, for Respondent.

RONNIE L. WHITE, Judge.

This case is an original disciplinary proceeding instituted by the 21 st Judicial Circuit Bar Committee and the Chief Disciplinary Counsel, Informant, against the Respondent, G. William Weier. The case arises from an information filed alleging that Mr. Weier violated Rules 4–1.7(a) and (b) and 4–1.8, Missouri Rules of Professional Conduct, with regards to a business transaction he organized. In this transaction, Mr. Weier formed a partnership of St. Louis urologists to purchase a particular medical device known as a lithotriptor. He then established a corporation in which he held a considerable financial stake to

lease the lithotriptor from the partnership and manage its use. Mr. Weier failed to disclose his financial interest in the corporation to the partners upon their request.

 In a disciplinary proceeding, the master's findings of fact, conclusions of law, and recommendation are advisory.[1] This Court reviews the evidence *de novo*, determines independently all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law.[2] A preponderance of the evidence indicating professional misconduct is required before discipline will be imposed.[3]

## FACTUAL BACKGROUND

In 1987, Dr. Bela Denes sought to obtain a lithotriptor that would be available to urologists in the St. Louis area. A lithotriptor is a medical device used for the treatment of kidney stones. While there was another lithotriptor in the St. Louis metropolitan area at Barnes Hospital, its use was prohibited by any non-Barnes physicians. Dr. Denes sought to obtain approval for a lithotriptor that would be available to all urologists in the St. Louis area. In order to obtain approval for the device, it is necessary to file a certificate of need (CON) with the Missouri Health Facilities Review Committee under section 197.300 et seq., RSMo 1986.[4] Dr. Denes contacted Mr. G. William Weier, an attorney with extensive experience in health care law and specifically with respect to CON procedures, to assist him in numerous aspects regarding obtaining the lithotriptor. Weier's contributions to the project included the filing of the CON, financing, purchase, preparation of necessary documentation, and the organization of any business entities that would be required for the project. The project became known as the Doctors Stone Group.

In order to secure the long-term profitability of the project, Mr. Weier determined that other urologists must be sought as partners and included in the project. Having other urologists in the ownership group would ensure that the lithotriptor would be used in their respective practices, thus guaranteeing the project's future profitability. To achieve this objective, Dr. Denes sent a letter to each member of the St. Louis Urological Society inviting them to attend an informational seminar on April 25, 1988, at Faith Hospital. The seminar specifically discussed Drs. Denes and Gregory's efforts to obtain an "open" lithotriptor owned by St. Louis urologists for the St. Louis area. The letter advised each doctor that Mr. Weier would be on hand to discuss the project. On the date of the meeting, Mr. Weier discussed the approval process for the CON and urged each doctor to write to the Missouri Health Facilities Review Committee suggesting the need for an "open" lithotriptor in the St. Louis area. Also at the meeting the possibility of forming a partnership of urologists to pursue the project was considered. At that meeting, Dr. Denes introduced Mr. Weier to the urologists present as "our attorney." Dr. Denes testified that he intended the term "our attorney" to refer only to he and Dr. Gregory, but at least one doctor testified that he was personally introduced to Mr. Weier by Dr. Denes as "our attorney."

On December 13, 1989, the CON for the Doctors Stone Group was issued by the Missouri Health Facilities Review Committee, and the Siemens Lithostar Lithotriptor was purchased, installed and rendered operational at the West County Surgery Center in St. Louis County.

---

1. *In re Oberhellmann,* 873 S.W.2d 851, 852–53 (Mo. banc 1994).

2. *Id.*

3. *In re Smith,* 749 S.W.2d 408, 410 (Mo. banc 1988).

4. This section provides, "any person who proposes to develop or offer a new institutional health service within the state must obtain a certificate of need from the committee prior to the time such services are offered."

Thirty-four St. Louis area urologists invested in the $1.5 million lithotriptor. As of the filing date of this case, the lithotriptor has generated in excess of $15 million.

In addition to the Doctors Stone Group Partnership that was created for the ownership of the lithotriptor, Weier also created the Doctors Stone Group, Inc., a corporation owned by Weier, his business associate Richard Winter, and Drs. Denes and Gregory in four equal shares. This corporation was to lease the lithotriptor from the partnership and secure a management company for the operation of the lithotriptor. The lease had a number of provisions favorable to the corporation including an option to purchase the lithotriptor from the partnership at fair market value and granting the corporation the discretion to determine any income that the partnership would receive in excess of its debt service.

The corporation then entered into an operating agreement with Financial Investments and Consultants, Ltd (hereinafter Financial) to conduct the daily operation of the lithotriptor. This agreement was later amended to substitute Larus Corporation, a health care management company 50% owned by Weier, as the service provider instead of Financial. Under the operating agreement, the Larus Corporation was to receive a management fee 6.5% to 7.5% of the project's profits.

All of the non-managing partners testified that they did not learn of the corporation, the lease between the corporation and partnership, or of Weier's interests that are permeated throughout this transaction until 1993 when several partners confronted Weier regarding what they perceived to be low profits resulting from the partnership. Weier did not distribute any documentation regarding his interests in either the Doctors Stone Group, Inc. or the Larus Corporation nor did he orally inform the partners of his interests. In lieu of affirmatively disclosing such information to the non-managing partners or sending copies of the lease agreement and operating agreements, Weier made knowledge of his ownership interest available at the January 1990 meeting in a ten inch volume of documentation, which the partners could peruse during the meeting.

Weier testified that he did explain all of the elements of the structure of the relationship between the Doctors Stone Group Partnership and the Doctors Stone Group, Inc. When asked specific questions about the structure or whether the venture would constitute a good investment, Weier testified that he instructed the partners to consult their individual attorneys or accountants. He also testified that he considered any information given during the meeting not to constitute legal advice. When asked specifically who owned the Doctors Stone Group corporation, Mr. Weier refused to offer an explanation stating that he was not authorized to disclose that information.

## ARGUMENT

### I. Attorney/Client Relationship

■ Weier is charged with violation of Rules 4–1.7(a) and (b) and Rule 4–1.8, Missouri Rules of Professional Conduct, with respect to possible conflicts of interest between Weier and the urologist-investors of the partnership. Weier contends that his representation flowed only to Drs. Denes and Gregory up until incorporation of Doctors Stone Group, Inc., and to that corporation anytime thereafter. He further submits that any actions that may have benefited the partnership, including setting up the partnership, submitting the CON, and negotiating the price and procurement of the lithotriptor, were only incidental to his representation of either Drs. Denes and Gregory or the corporation.

It is true that the interests of the corporation and those of the partnership are parallel in many respects, since the corporation relied upon the partnership's lithotriptor for its operation and the partnership in turn relied upon the daily

management activity of the corporation. Nonetheless, the extensive contacts between Weier and the partnership rise above the level that could be deemed incidental to his representation of Drs. Denes and Gregory or the corporation. In fact, it is a stronger argument to say that such actions inured to the direct benefit of the partnership and only incidentally benefited the corporation or its shareholders.

■■■ Considering in aggregate Weier's invitation to the area urologists of the two investors meetings, his introduction at those meetings as "our attorney", his drafting of numerous partnership documents including the partnership agreement, his preparation of the Federal Employer Identification number for the partnership, and his negotiation and procurement of the lithotriptor to be owned by the partnership, there is little doubt that the scope of Mr. Weier's representation extended to the partnership as well as Drs. Denes and Gregory and the corporation. While the evidence may not be sufficient to show that Weier engaged in an intentional deception, his actions may still be subject to discipline. In Missouri, an attorney's transactions with a partnership must be held to a stringent review. He "must prove by clear proof that his adverse interest was disclosed to the client and was perfectly understood."[5] Furthermore, an attorney is bound to "scrupulous fidelity to the cause of the client which precludes the attorney from any personal advantage from the abuse of that reposed confidence,"[6] and an attorney's reliance upon good faith does not "bear to dispel that predisposition" of the presumption of impropriety.[7]

At best, the relationship between the partners and Weier was never clearly defined. Because Mr. Weier failed to affirmatively disclose to the urologist-investors his financial interest in the lithotriptor and remained idle where confusion regarding his representation persisted, he should be subject to discipline.

## II. Mitigating Factors when Considering Discipline

■■■ The fundamental purpose of an attorney disciplinary proceeding is to "protect the public and maintain the integrity of the legal profession."[8] When considering appropriate discipline for an attorney, this Court has often considered the attorney's previous record.[9] Mr. Weier has been practicing law in Missouri for some 32 years. During that time, he has never received a complaint or been subject to any disciplinary action prior to this case. Mr. Weier is also held in high regard among his colleagues and by the judiciary before whom he regularly practices. Furthermore, Mr. Weier has fully cooperated and given full disclosure to both the disciplinary committee and the disciplinary hearing panel.

It should also be noted that no discernible financial harm was brought upon the partners by virtue of Mr. Weier's interest in the venture. Instead, it appears that the partnership has enjoyed tremendous success and has presumably benefited the partners with both substantial investment return and expansion of their practices.

In light of Mr. Weier's cooperation in the investigation of this matter, his excellent reputation among his colleagues in his community, and the absence of any serious harm to his clients, this Court hereby publicly reprimands Mr. G. William Weier for

**5.** *Portman v. Madesco Investment Corp.,* 760 S.W.2d 457, 461 (Mo.App.1988).

**6.** *Shaffer v. Terrydale Management Corp.,* 648 S.W.2d 595, 605 (Mo.App.1983).

**7.** *Id.* at 608.

**8.** *In re Waldron,* 790 S.W.2d 456, 457 (Mo. banc 1990).

**9.** *See In re Cupples,* 952 S.W.2d 226, 237 (Mo. banc 1997); *In re Harris,* 890 S.W.2d 299, 302 (Mo. banc 1994).

his failure to disclose his financial involvement in the Doctors Stone Group. This result is consistent with the comments following *A.B.A. Standards for Imposing Lawyer Sanctions*, § 4.33[10] which note that reprimand is the most appropriate sanction where, "a lawyer engages in a single instance of misconduct involving a conflict of interest when the lawyer has merely been negligent and there is no overreaching or serious injury to the client."[11] As the circumstances of this case fit squarely into the language of this comment and such discipline serves the purpose of the Rules of Professional Conduct, a public reprimand is appropriate.

BENTON, C.J., PRICE, COVINGTON and HOLSTEIN, JJ., concur.

LIMBAUGH, J., concurs in separate opinion filed.

LOWENSTEIN, Special Judge, concurs in part and dissents in part in separate opinion filed.

WOLFF, J., not participating.

STEPHEN N. LIMBAUGH, Jr., Judge.

I write separately to express my disagreement with the majority's finding that Respondent acted negligently, rather than intentionally, in violating the conflict of interest rules. Nonetheless, I agree that a public reprimand is the appropriate sanction.

The dissent fairly summarizes the evidence that leads to the conclusion that Respondent acted intentionally, but I would add one point in particular that

seems more egregious than any other, which is Respondent's outright refusal to disclose his ownership interest in the corporation when confronted by the non-managing partners. In my view, this circumstance tips the scales against Respondent from what could otherwise have been characterized as only passive, negligent non-disclosure.

Although the dissent correctly cites the general rule, drawn from the ABA standards, that a lawyer who intentionally engages in a conflict of interest or other misconduct should be suspended or disbarred, the ABA Standards also recognize that mitigating factors may justify reduction in the degree of discipline to be imposed. *See ABA Standards for Imposing Lawyer Sanctions*, Rule 9.32. In this case, despite Respondent's intentional misconduct, I would hold that the mitigating circumstances outweigh the aggravating circumstances so as not to warrant imposition of a suspension. Those mitigating circumstances, the majority points out, include 1) that Respondent has practiced 32 years without an ethical violation, Rule 9.32(a), 2) that he enjoys a fine reputation among his colleagues and the judiciary, Rule 9.32(g), and 3) that when charged, he cooperated fully with the authorities, Rule 9.32(e). Furthermore, while Respondent had clearly put himself in a position to line his pockets at the expense of the partnership, it appears, as the majority notes, that the partnership was not dealt with unfairly, at least in the sense that the partnership likely would have entered in the same transactions with the corporation had it been owned by the managing doctors

---

**10.** *A.B.A. Standards for Imposing Lawyer Sanctions*, § 4.33 (1986) provides:
Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and cause injury or potential injury to a client.

**11.** *See In re Howard*, 912 S.W.2d 61, 63–64 (Mo. banc 1995) (finding that because attorney's culpability regarding sexual misconduct

was more than negligent, public reprimand was not appropriate); *In re Farry*, 909 P.2d 1096, 1098 (Colo.1996) (where attorney engaged in negligent conflict of interest, mitigating factors were present, and no harm was done to client, public reprimand was appropriate); *In re Matter of Palmieri*, 76 N.J. 51, 385 A.2d 856, 862 (1978) (public reprimand is appropriate where an attorney who represented the seller in a business transaction represented the buyers at the seller's insistence).

alone. *See In re Kopf,* 767 S.W.2d 20, 23 (Mo. banc 1989) (The fact that the client suffered no harm or minimal harm is a mitigating circumstance.).

Finally, there is no indication that a suspension is necessary for the protection of the public, and the stigma of a public reprimand seems ample punishment to deter Respondent from engaging in even the semblance of a conflict of interest in the future. For these reasons, I concur in the imposition of a public reprimand.

HAROLD L. LOWENSTEIN, Special Judge, concurring in part and dissenting in part.

I fully concur with the majority opinion that the Respondent should be subject to discipline. I reluctantly, but respectfully, file this dissent on the issue of the extent of discipline. While there are mitigating factors pointing to imposition of a reprimand, there are several aggravating factors that point to the sanction of a suspension.

First, while the principal opinion states there is no credible evidence showing Respondent "engaged in an intentional deception . . . ," the facts show differently. As an experienced lawyer who is knowledgeable in the field of health law, the record here shows: a) Respondent's involvement in this matter commenced in April 1988 at the meeting where he addressed the prospective partners; b) it continued through his drawing up of the partnership sometime in mid to late 1989 and his submission of the CON application filed in September 1989; c) on September 8, 1989, the corporation that leased the lithotripter was incorporated, with Respondent as an officer and board member and an owner of fifty percent of the stock of a corporation that held fifty percent of the leasing corporation; d) on December 2, 1989, the partnership entered into the lease agreement with the corporation in which Respondent was an undisclosed owner of twenty-five percent of the stock; and e) his deception culminated when his ownership in the corporation that leased the equipment was first brought to light at a June 5, 1993, meeting of the partners.

The above facts, along with Respondent's failure to disclose his ownership interests to the partners, and instead making copious records available for inspection, show an intentional pattern of deception. The actions of the Respondent in his legal representation over the span of time show a deliberate plan, not a chance mistake. "Respondent was more than negligent; therefore, public reprimand is not appropriate." *In re Oberhellmann,* 873 S.W.2d 851, 856 (Mo. banc 1994); *In re Howard,* 912 S.W.2d 61, 63–64 (Mo. banc 1995).

Second, Respondent may have been forthright and cooperative with the hearing panel, but he failed, even when confronted by the partners, to disclose his financial interests in the corporation. *Cf. Matter of Cupples,* 952 S.W.2d 226, 237 (Mo. banc 1997) (Covington, J., concurring and dissenting). This conduct, under all the facts here, call for a suspension rather than a reprimand.

Third, in deciding here between reprimand and suspension, mitigation in discipline should not occur just because the partnership venture was successful. When the partnership formed, and when the lease and management negotiations started with the corporation, no one had any way of knowing the venture would be profitable. Nor, under the facts here, should discipline be limited to a reprimand merely because the damage to the partners was not greater.

Mr. Weier is an excellent attorney with a long and established record. These are mitigating factors. On the other hand, it might be argued the substantial experience of Respondent in health law might well work as an aggravating and a mitigating factor. Regardless, the purpose of this action against an attorney for violation of the Rules of Professional Conduct is to protect the public, the legal system and

the legal profession. *In re Lang*, 641 S.W.2d 77, 79 (Mo. banc 1982). The conduct here was intentional, neither negligent nor inadvertent, and was solely for the attorney's benefit. *Matter of Mendell*, 693 S.W.2d 76, 78 (Mo. banc 1985). This factor should be enough to rule out a reprimand as the sanction for the conduct. Even though the clients suffered no serious injury according to Section 4.33 of the A.B.A. Standards, the discipline here should be suspension, and for a period of six months. A suspension serves the dual purpose of discipline, while at the same time protecting the public and deterring others from engaging in like conduct. *In re Littleton*, 719 S.W.2d 772, 778 (Mo. banc 1986) (Blackmar, J., concurring, and Welliver, J., dissenting); *In re Disney*, 922 S.W.2d 12, 15 (Mo. banc 1996).