**In the Matter of Carlo B. COLEMAN.**

**No. 10S00–8801–DI–135.**

Supreme Court of Indiana.

April 9, 1991.

H. Lloyd Whitis, Corydon, for respondent.

Sheldon A. Breskow, Executive Secretary and Mark A. Jones, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This professional disciplinary proceeding involves a two count complaint filed by the Disciplinary Commission of this Court. Carlo B. Coleman, the Respondent in this case, has been charged with violating the *Rules of Professional Conduct for Attorneys at Law* and the *Code of Professional Responsibility for Attorneys at Law.* In accordance with the procedure set forth in Admission and Discipline Rule 23, a Hearing Officer was appointed, conducted a hearing, and has tendered findings of fact and conclusions of law for this Court's consideration. The Respondent has petitioned for review, challenging a portion of the tendered findings, and the Commission has responded to such petition.

In Count I, the Respondent is charged with failing to deliver funds to his client in violation of Rule 1.15(b) of the *Rules* and Disciplinary Rules 9–102(B)(1), (2), (3), and (4) of the *Code.* In general, these disciplinary provisions provide that upon receipt of a client's funds, an attorney should notify his client, safeguard the funds, provide an accounting, and promptly deliver the funds to his client. Under this Count, the Respondent is further charged with engaging in criminal acts (theft and conversion) that reflect adversely on his honesty and trustworthiness in violation of Rule 8.4(b) and Disciplinary Rule 1–102(A)(3) and engaging in dishonesty, deceit, and misrepresentation, in violation of Rule 8.4(c) and Disciplinary Rule 1–102(A)(4).

Upon review of the tendered findings for which there is no objection, we find that on or about June 11, 1986, Respondent received a settlement check for his client in the amount of $5,000.00; the check required the signature of the Respondent and his client. The client, as instructed by the Respondent, endorsed the check on June 13, 1986, and was informed by Respondent that there would be a wait of three to four weeks for the check to clear the bank. Respondent deposited the check into his personal checking account which had a balance of $361.72 before the deposit. On June 13, 1986, Respondent wrote twenty-two unrelated checks on this account total-

ling $3,997.84. On the next day, Respondent wrote a check for $300.00 in cash. On June 16, 1986, Respondent advised the agent for the insurance company that there was no problem, the check had been put into his account, and that he would dismiss the action. Respondent did not forward his client a portion of the proceeds as promised and by the end of the month of June 1986, this checking account had a balance of $241.23.

In July, 1986, this client employed Respondent in a dissolution proceeding. A final hearing dissolving the marriage was conducted on October 8, 1986. Thereafter, the client continued in her effort to get her portion of the settlement check.

On August 3, 1987, the client directly contacted the insurance company and was told that there was no "stop payment order" issued by the insurance company and that the check had been cashed on June 13, 1986. She confronted the Respondent and was given a check for $1000.00; however, upon presentment the bank would not honor the check. On the next day, in return for the check, the Respondent gave this client $2,486.50 and had her sign a "Distribution Sheet." The Respondent kept the remaining portion of the settlement check.

The Hearing Officer further found that the Respondent and this client were friends and that there was a history of loans between the parties in the past. There was a specific conclusion that Respondent did not possess an intent to permanently keep this client's money.

In his petition for review, Respondent questions a further tendered finding that when the $1000.00 check was not honored, it was by reason of insufficient funds. Respondent asserts that there was a hold and the conclusion of insufficient funds, accordingly, is not founded. The Commission counters that the facts support the conclusion.

Our assessment is that this disputed finding is of little moment. Respondent offered his client a check which was not honored upon presentment. The next day, in return for the check, Respondent paid his client in cash the proceeds of a settlement check that was long overdue.

In light of the above noted findings of fact, we now conclude that by failing to deliver settlement proceeds to this client for over one year and placing this client's funds into a personal checking account, Respondent violated Rule 1.15 of the *Rules* and Disciplinary Rules 9–101(B)(2), (3), and (4) of the *Code*. Accepting the Hearing Officer's specific determination that the Respondent did not intend to permanently deprive this client of the use of this money, we find that the Respondent did not commit theft, but conclude that by placing this client's settlement proceeds into the Respondent's personal checking account and using these funds for personal obligations, the Respondent exerted unauthorized control over the property of another person and, accordingly, engaged in conversion thereby violating Rule 1.15 of the *Rules* and Disciplinary Rule 1–102(A)(3) of the *Code*. Lastly, under Count I, we conclude that by not forwarding the settlement proceeds as promised, the Respondent engaged in dishonesty in violation of Rule 8.4(c) of the *Rules* and Disciplinary Rule 1–102(A)(4) of the *Code*.

In Count II, the Respondent is charged with committing criminal acts that reflect adversely on his fitness as an attorney in violation of Rule 8.4(b) of the *Rules of Professional Conduct for Attorneys at Law*. The alleged criminal conduct involves repeated incidents of driving while intoxicated. Neither party has challenged the tendered findings and conclusion of the Hearing Officer.

This Court, accordingly, now finds that on May 31, 1987, the Respondent was arrested in Oldham County, Kentucky, for driving under the influence of alcohol, driving without a valid operator's license, and reckless driving; Respondent's blood alcohol concentration was twenty-three one-hundredths percent (.23%). At that time, Respondent was released on bond to appear in the Oldham District Court on June 10, 1987. Following two requests by Respondent, the case, ultimately, was reset for June 29, 1987, at which time the Re-

spondent failed to appear. On July 8, 1987, the Kentucky Court issued a bench warrant for Respondent's arrest. Thereafter, the Respondent was ordered to appear on July 27, 1987, to show cause, if any, why his bond should not be forfeited; he again failed to appear and the court ordered that Respondent's bond be forfeited and left the Warrant of Arrest open.

On October 5, 1987, another attorney contacted the Kentucky court, the Warrant for Arrest was recalled, and the matter was reset for October 19, 1987. On this date, the Respondent pled guilty to driving under the influence, second offense (Respondent was previously convicted of driving under the influence in Kentucky) and the remaining charges were dismissed. He was sentenced to seven days in jail and referred to alcohol dependency evaluation. Respondent entered and completed an alcohol program in Oldham County, Kentucky.

This Court has not specifically addressed the issue of whether the act of driving while intoxicated constitutes actionable misconduct (criminal acts that reflect adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects) under Rule 8.4(b) of the *Rules of Professional Conduct.* Our prior decisions have involved the application of Disciplinary Rules 1–102(A)(3), (5), and (6) of the *Code of Professional Responsibility.* See *In re Oliver* (1986), Ind., 493 N.E.2d 1237. These prior disciplinary provisions proscribed illegal conduct involving moral turpitude, conduct prejudicial to the administration of justice, and conduct that adversely reflects on an attorney's fitness to practice law, respectively.

This does not mean, however, that our prior considerations are irrelevant. Rule 8.4(b) closely parallels former Disciplinary Rule 1–102(A)(6). Accordingly, as to the issue of fitness to practice law, our analysis of conduct and the bounds of professional standards under the *Code* are fully applicable under the *Rules. In re Roche* (1989), Ind., 540 N.E.2d 36.

With this in mind, Rule 8.4(b) presents a decision of whether there is a nexus between the misconduct and the Respon-

dent's fitness to practice law. *In re Roche, supra; In re Jones* (1987), Ind., 515 N.E.2d 855; *In re Oliver, supra.* Or as aptly stated in *Oliver,* can this lawyer be trusted to keep his client's secrets, give effective legal advice, fulfill his obligations to the courts, and so on?

Based upon the above noted findings under Count II, we now conclude that Respondent engaged in a pattern of misconduct involving repeated incidents of driving while intoxicated and a disregard for the legitimate orders of a court. His blood alcohol level was more than twice the legal limit under the laws of this state and, although he was afforded every courtesy, the Respondent chose to respond to the court only upon threat of arrest. The disregard to fellow citizens on the highway and the willful avoidance of judicial obligation presented in this case adversely reflects on Respondent's fitness to practice law and thereby constitutes a violation Rule 8.4(b) of the *Rules.*

The parties further agreed that findings relative to a third charge of driving under the influence be incorporated into the disposition of this disciplinary action. Accordingly, the Hearing Officer tendered findings to the effect that at the time of his arrest in Oldham County, Kentucky, the Respondent was on release for driving a motor vehicle while intoxicated. This resulted in a class A misdemeanor conviction. We now adopt these facts and find that Count II is accordingly amended to incorporate such findings.

█ Having determined that Respondent engaged in misconduct, it is now the duty of this Court to assess an appropriate disciplinary sanction. This requires an examination of the nature of the misconduct, the specific acts of the Respondent, the impact on the public, this Court's responsibility to preserve the integrity of the Bar, and the risk to which the public will be subjected if the Respondent is permitted to continue in the profession. *In re Glanzman* (1990), Ind., 555 N.E.2d 1295; *In re Olsen* (1989), Ind., 547 N.E.2d 849; *In re Hampton* (1989), Ind., 533 N.E.2d 122.

The Hearing Officer in this case observed that Respondent's personal problems now appear to be under control and that he did not appear likely to bring further grief to the clients he serves or embarrassment to the legal profession. Perhaps, this observation is correct, but Respondent's current level of professional performance does not establish the only basis for the imposition of sanction. In the course of the misconduct described above, Respondent exerted unauthorized control over property of a client. Simply stated, he used a client's money for personal needs. Current performance does little to justify this in the mind of the client. This Court would be remiss in its obligation to protect the public and the integrity of the profession if there was not a serious response to this type of conduct.

When the unauthorized use of a client's money is coupled with a course of conduct involving three convictions for driving while intoxicated, it is reasonable to assume that the public in general could legitimately question Respondent's fitness to remain in the profession. The image of a drunken lawyer driving down the highway with his client's money in his pocket does little to serve the profession.

In light of the above considerations, we find that by reason of the misconduct found in this case, a substantial period of suspension is warranted. It is therefore ordered that the Respondent, Carlo B. Coleman, is suspended from the practice of law for a period of three years beginning May 6, 1991.

Costs of this proceeding are assessed against the Respondent.

GIVAN, J., dissents from the portion of the opinion imposing the three year suspension and would disbar the Respondent from the practice of law.