In re Daniel J. KAZANAS, Respondent.

No. SC 83033.

Supreme Court of Missouri,
En Banc.

Jan. 14, 2003.

As Modified on Denial of Rehearing
March 4, 2003.

Alan D. Pratzel, Special Representative, St. Louis, Sharon K. Weedin, Office of Chief Disciplinary Counsel, Jefferson City, for Informant.

Maurice B. Graham, St. Louis, for Respondent.

William Ray PRICE, Jr., Judge.

## I.

On August 4, 2000, pursuant to a plea agreement, Daniel J. Kazanas was found guilty of filing a false federal tax return in violation of 26 U.S.C. § 7206(1) (2001).[1] This crime is a felony. As part of his plea agreement, Mr. Kazanas promised to surrender his law license. On October 2, 2000, Mr. Kazanas deposited his law license in this Court. On January 18, 2001, Mr. Kazanas filed an application for voluntary surrender of license pursuant to Rule 5.25[2] with this Court. In the application, Mr. Kazanas recited that neither his attorney nor the assistant United States Attorney handling his case "anticipated or intended that Respondent would be unable for a period of five years [to] be eligible to apply for reinstatement or that he would only be eligible for reinstatement if he applied for, was allowed to take, and successfully passed the Missouri Bar Exam." Respondent admitted in his application for surrender that "he has violated Rule 4–8.4(b) and (c) of the Missouri Rules of Professional Conduct by his violation of section 7206(1), which adversely reflects upon his honesty in the handling of his 1996 personal income taxes." Mr. Kazanas sought to have his license suspended

1. Any person who—
   (1) **Declaration under penalties of perjury.** Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .
   . . .
   shall be guilty of a felony . . . .

2. Rule 5.25 states in pertinent part:
   (a) A lawyer may seek to surrender the lawyer's license to practice law in this state voluntarily by application to this Court. The application shall be accompanied by

the license and shall set forth the basis for tendering the license, including any alleged ethical misconduct that is the subject of investigation or complaint under this Rule 5, whether or not formal disciplinary actions have been commenced. The application may also allege permanent disability to practice law. The lawyer shall admit or deny the ethical misconduct included in the application. . . .
. . . .
(c) In lieu of accepting the voluntary surrender of the applicant's license, the Court may direct the chief disciplinary counsel to proceed as otherwise provided in this Rule 5.

rather than suffer disbarment. This Court refused to accept Mr. Kazanas' voluntary surrender under these circumstances pursuant to Rule 5.25.

Respondent's conviction under 26 U.S.C. § 7206(1) (2001) and his violation of Rule 4–8.4(b), (c), and (d) warrant disbarment.

## II. Factual Background

In a disciplinary proceeding, the disciplinary hearing panel's "findings, conclusions, and recommendations are advisory in nature. This Court reviews the evidence *de novo,* determines independently the credibility, weight, and value of the testimony of the witnesses, and draws its own conclusions of law." *In re Oberhellmann,* 873 S.W.2d 851, 852 (Mo. banc 1994). In attorney disciplinary proceedings, the truth of the allegations must be established by a preponderance of the evidence. *In re Howard,* 912 S.W.2d 61, 63 (Mo. banc 1995). "The purpose of attorney discipline is to protect the public and maintain the integrity of the legal profession." *In re Caranchini,* 956 S.W.2d 910, 918–919 (Mo. banc 1997). The Court finds the following facts:

Dan Kazanas worked his way through both college and law school. Mr. Kazanas was licensed to practice law in Missouri in 1983. Shortly thereafter, Mr. Kazanas joined the firm of Klutho, Cody & Kilo, P.C. A three-person executive committee consisting of the named partners managed all aspects of the firm, including hiring, termination, bonuses and opportunities for shareholder status. The firm did not recognize individual "ownership" of clients— all clients were "firm clients." All attorneys' fees collected from clients belonged to the firm and the firm maintained a proprietary interest in the work performed by firm attorneys on behalf of firm clients.

In 1994, after ten years as an associate with the firm, Mr. Kazanas requested a meeting with John Kilo to discuss his compensation and future with the firm. At the meeting, Mr. Kilo told Mr. Kazanas that he would become a shareholder in the firm and that Mr. Kilo would confer with the other members of the executive committee concerning Mr. Kazanas' salary. There is a dispute as to other topics of discussion at the meeting. Mr. Kazanas contends that Mr. Kilo promised him thirty percent of the fees collected from clients Mr. Kazanas brought to the firm. Mr. Kilo denies any agreement to divide fees.

Following the meeting, Mr. Kazanas became a shareholder of the firm and received a salary increase. In addition, Mr. Kilo made a series of personal loans to Mr. Kazanas to help him with his financial situation. However, Klutho, Cody & Kilo refused to pay respondent thirty percent of "his" attorney's fees. Frustrated, Mr. Kazanas told Mr. Kilo, "Well, I've been honoring the agreement. I'm going to continue to honor the agreement, and I'm going to enforce the agreement."

Between 1994 and 1996, Mr. Kazanas misappropriated at least $169,172.17 in fees from Klutho, Cody & Kilo. He deposited twenty-four checks, totaling $63,644.44, made payable to the law firm into his own account. He altered a Klutho, Cody & Kilo address stamp by covering the address portion to make it appear to be a bank deposit stamp. He then forged John Kilo's signature on the back of each check, signed his own name to each check and deposited the checks into his personal bank account.

Mr. Kazanas also misappropriated an additional thirty-eight checks, totaling $105,527.73. These checks were made payable to respondent personally. Each check represented payment by Klutho, Cody & Kilo clients for hours worked by firm attorneys, including Mr. Kazanas. In

some cases, respondent specifically requested the clients to make checks payable to him personally instead of to the firm. Mr. Kazanas deposited these checks into either his personal checking account or the account of the firm he joined after leaving Klutho, Cody & Kilo. In at least one instance, Mr. Kazanas misappropriated attorneys' fees from Klutho, Cody & Kilo by bartering with a client for personal services in exchange for payment of the firm invoice.

In January 1997, Mr. Kazanas left Klutho, Cody & Kilo. In 1998, a Klutho, Cody & Kilo client told Vic Klutho that Mr. Kazanas had directed the client to make a check for attorneys' fees payable to Mr. Kazanas personally. Based upon this information, the firm began an internal investigation of the manner in which Mr. Kazanas handled firm clients and firm fees. The firm also notified the United States Attorney's Office of Mr. Kazanas' conduct.

The United States Attorney's Office, along with the Federal Bureau of Investigation, conducted an investigation of Mr. Kazanas' conduct. This investigation resulted in a nine-count indictment against Mr. Kazanas. Counts I through VII charged that Mr. Kazanas defrauded and embezzled $150,000 from Klutho, Cody & Kilo. Counts VIII and IX alleged that Mr. Kazanas willfully filed tax returns that he knew to be untrue by underreporting income to the Internal Revenue Service.

Mr. Kazanas ultimately reached a plea agreement with the government. In exchange for his plea of guilty to Count IX, the government agreed to dismiss the other eight counts. The elements of Count IX include the falsity of the tax form, that Mr. Kazanas knowingly put materially false information in the form and that he acted willfully. By signing the stipulation, Mr. Kazanas acknowledged that he understood the elements of the crime and admitted committing them. As part of the plea, Mr. Kazanas agreed to cooperate with the IRS in resolving his tax liability, to give Travelers Property Casualty—Klutho, Cody & Kilo's bonding company—a consent judgment and settlement agreement in the amount of $164,374.04, to repay in full the loans made by Mr. and Mrs. Kilo and to "voluntarily surrender his law licenses immediately at the time of sentencing if the Court accepts this plea bargain." On August 4, 2000, the Federal District Court accepted the plea agreement and convicted Mr. Kazanas of the Count IX felony of filing a false federal tax return.

Mr. Kazanas did not immediately surrender his law license as he had agreed. One week after signing the stipulation of facts relevant to sentencing, Mr. Kazanas requested a sample surrender application from the Office of Chief Disciplinary Counsel (OCDC). The OCDC informed respondent that the Rule 5.25 voluntary surrender procedure would require him to advise this Court of the ethical misconduct underlying his application, and that he would have to admit or deny that the misconduct had occurred. It was also explained that voluntary surrender results in disbarment, that he could not apply for reinstatement for five years after disbarment, and that he would have to retake and pass the bar examination within one year prior to filing for reinstatement.

Mr. Kazanas wound up his law practice and notified his clients that he must surrender his license to practice law. Although respondent deposited his law license with the Court on October 2, 2000, he did not apply to surrender his license to this Court. On October 16, 2000, this Court suspended Mr. Kazanas from the practice of law pursuant to Rule 5.21(c) and ordered him to show cause why an order for disbarment should not issue. On

October 27, 2000, the United States of America filed a motion to revoke defendant's sentence because Mr. Kazanas had yet to surrender his law license. Finally, on January 18, 2001, more than five months after Mr. Kazanas was sentenced, he filed his application for voluntary surrender of license pursuant to Rule 5.25. Although he admitted in the application that he was convicted of violating 26 U.S.C. § 7206(1) (2001) and that he violated Rule 4–8.4(b) and (c), he nonetheless requested that he not be disbarred and that his license be suspended instead. The Court refused to accept Mr. Kazanas' surrender on that basis.

This Court appointed McCormick Wilson as special master to inquire into issues of appropriate discipline. The master recommended that Kazanas be disbarred from the practice of law.

### III. Discussion

#### A. Surrender of License

■ It is obvious that Mr. Kazanas misunderstood the result of surrendering his law license when he entered into his plea agreement with the United States Attorney and was subsequently convicted of violation of 26 U.S.C. § 7206(1) (2001). When the Court accepts the surrender of a license to practice law the standard language used in its order reads that:

... the surrender of the license of _____ be accepted and that said license be cancelled.

It is further ordered that the name of _____ be stricken from the roll of attorneys in this state, that he (or she) be disbarred, and that the right to practice law in this state be terminated.

An individual who surrenders his license is disbarred and must seek reinstatement to the bar in accordance with Rule 5.28. That rule requires the individual to take the bar examination and attain a passing score. Rule 5.28(c). The individual also must wait five years from the date discipline is imposed to seek reinstatement. Rule 5.28(a)(2).

Mr. Kazanas argues that his license should only be suspended. However, suspension is inconsistent with his promise in federal court to surrender his license. Though his misunderstanding may provide cause for him to seek relief in the federal court, the surrender of his license cannot be accepted other than in accordance with this Court's rules and his surrender is rejected.

#### B. The Income Tax Conviction and Misappropriation of Funds

■ "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Rule 4–8.4(b). "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Rule 4–8.4(c). "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." Rule 4–8.4(d).

Mr. Kazanas does not contest that he is guilty of violating 26 U.S.C. § 7206(1) (2001) or Rule 4–8.4(b), (c), and (d) as it relates to violation of 26 U.S.C. § 7206(1) (2001). In his brief to this Court, Mr. Kazanas also admitted that "the self-enforcement of the fee-division arrangement was wrong and against the professional rules of conduct for an attorney in the state of Missouri." The only question that remains is the appropriate level of discipline.

### III. Discipline

■ The purpose of discipline is not to punish the attorney, but to protect

the public and maintain the integrity of the legal profession. Those twin purposes may be achieved both directly, by removing a person from the practice of law, and indirectly, by imposing a sanction which serves to deter other members of the Bar from engaging in similar conduct.

*In re Littleton*, 719 S.W.2d 772, 777 (Mo. banc 1986) (citations omitted). In determining the appropriate discipline, the Court must consider aggravating and mitigating circumstances. *In re Cupples*, 979 S.W.2d 932, 937 (Mo. banc 1998).

## A. The Felony Conviction

Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft . . .; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

*Commentary*

A lawyer who engages in any of the illegal acts listed above has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity. This duty to the public is breached regardless of whether a criminal charge has been brought against the lawyer. In fact, this type of misconduct is so closely related to practice and poses such an immediate threat to the public that the lawyer should be suspended from the practice of law immediately pending a final determination of the ultimate discipline to be imposed. . . .

In imposing final discipline in such cases, most courts impose disbarment on lawyers who are convicted of serious felonies.

*Failure to Maintain Personal Integrity,* 119 ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT 01:827 (June 17, 1992). When a Missouri attorney has pleaded guilty or *nolo contendere* to or been found guilty of any felony, the lawyer's license is immediately suspended pending the final disposition of any disciplinary proceedings. *See* Rule 5.21. The same process occurs when the lawyer's conduct results in conviction of a misdemeanor involving moral turpitude. *Id.* Although there is no automatic disbarment for felonies in general under Rule 4–8.4, typically a felony conviction will merit disbarment of the attorney.

▆▆▆ Willful failure to pay federal income tax is a crime of moral turpitude. *In re Duncan*, 844 S.W.2d 443, 444–45 (Mo. banc 1992). *See also In re MacLeod*, 479 S.W.2d 443, 445 (Mo. banc 1972); *In re Foley*, 364 S.W.2d 1, 7 (Mo. banc 1963). What concerns the Court here is not the violation of the tax code *per se*, but that the violation consisted of willful and deliberate conduct. Conviction of willfully violating a federal tax crime is sufficient to authorize disbarment. *In re Canzoneri*, 334 S.W.2d 30, 33 (Mo. banc 1960). *See also Foley*, 364 S.W.2d at 7. Mr. Kazanas' willful violation of the tax code clearly reflects adversely on his fitness to practice law and violates Rule 4–8.4(b), (c), and (d).

## B. Misappropriation of Attorney's Fees

▆▆▆ As in Part III. A., above, the Court is more concerned with Mr. Kazanas' willful and deceitful conduct than with the particulars of his intra-firm conflict. *See Matter of Cupples*, 952 S.W.2d 226, 237 (Mo. banc 1997). It is up to the partners and shareholders of a law firm to work out financial differences among themselves.

Disciplinary review is not a proper venue for the general airing of such problems and must not be used as leverage in such disputes. However, disciplinary review is proper when, as here, the conduct relating to the intra-firm disagreement raises concern about an attorney's fitness to practice law. *See Cupples,* 952 S.W.2d at 237. *See generally In re Cupples,* 979 S.W.2d 932 (Mo. banc 1998).

Mr. Kazanas had means of appropriately resolving his conflict with his firm. For example, he could have made a demand for the funds allegedly owed him; notified the other shareholders and set up an escrow or trust account in which to deposit the disputed funds; and/or filed a civil lawsuit. Instead, he withheld funds from his law firm without giving notice for a period of three years. Mr. Kazanas altered the firm return-address stamp to make it appear to be a deposit stamp and forged the name of John Kilo on deposited checks. Mr. Kazanas did not keep merely thirty percent of all of the fees he generated for his firm, but kept the entire fee from some clients and kept none from others and retained fees earned by other firm attorneys. Finally, Mr. Kazanas reported only a fraction of this income to the Internal Revenue Service.

Such conduct reflects adversely on Mr. Kazanas' "honesty, trustworthiness, [and] fitness as a lawyer." Rule 4–8.4(b). Such conduct clearly involves "dishonesty, fraud, deceit, [and] misrepresentation" and "is prejudicial to the administration of justice." Rule 4–8.4(c), (d). Mr. Kazanas' conduct in misappropriating fees from his law firm violates Rule 4–8.4(b), (c), and (d).

### C. Mitigation / Aggravation

Mr. Kazanas implores this Court to lessen the severity of discipline because of mitigating factors. Mr. Kazanas presented a number of witnesses testifying to his favorable character, reputation for integrity, honesty and loyalty, and skill and competency as a lawyer. In determining appropriate discipline we are indeed mindful of such mitigating factors. However, even when mitigating factors exist and even where it is unlikely that the attorney will repeat the transgression, "certain acts by attorneys so impugn the integrity of the legal system that disbarment is the only appropriate means to restore public confidence in it. Some acts . . . may indicate such a lack of respect for the law . . . that disbarment may be warranted." *In re Frick,* 694 S.W.2d 473, 480 (Mo. banc 1985).

Daniel J. Kazanas is hereby disbarred from the practice of law and his name ordered stricken from the roll of attorneys in the courts of this state.

LIMBAUGH, C.J., WHITE, WOLFF, BENTON and STITH, JJ., and SPINDEN, Sp.J., concur.

TEITELMAN, J., not participating.