**In re Byron G. STEWART, Respondent.**

**No. SC 91370.**

Supreme Court of Missouri,
En Banc.

June 28, 2011.

---

Alan D. Pratzel, Sharon K. Weedin, Chief Disciplinary Counsel's office, Jefferson City, for Chief Disciplinary Counsel.

Byron G. Stewart, did not file a brief or participate in oral arguments before this Court.

MARY R. RUSSELL, Judge.

Attorney Byron Stewart pleaded guilty to his fourth charge of driving while intoxicated, resulting in a felony conviction. The Office of Chief Disciplinary Counsel (OCDC) seeks to discipline his law license for his violation of the rules of professional conduct. In light of Stewart's multiple instances of drunken driving and the seriousness of his felony conviction, he is suspended indefinitely from the practice of law with no leave to apply for reinstate-

ment for six months after the mandate is issued.

## I. Background

Stewart was licensed to practice law in Missouri in 1982. His criminal history includes four DWIs in 11 years. He pleaded guilty to his first DWI in 1997, his second in 2004, his third in 2006, and he was arrested for his fourth DWI in November 2008, when he was found "passed out and intoxicated while behind the wheel of a parked vehicle." His fourth DWI was charged as a class D felony[1] and resulted in a three-year suspended sentence with supervised probation. His probation terms require alcohol and drug testing and forbid him from driving or consuming alcohol. He was ordered to serve 60 days of shock time in the county jail, but during his shock time he was allowed to leave the facility on work release to practice law.

During Stewart's shock time, OCDC moved this Court to discipline Stewart's law license pursuant to Rule 5.21(c), under which an attorney who has pleaded guilty to a felony is subject to discipline by this Court without the requirement of any other proceeding. OCDC recommends that Stewart's license be suspended without leave to reapply for three years, stayed for a three-year period of probation with terms that mirror those of his criminal probation.

Stewart's only previous discipline involved an April 2009 admonition relating to diligence and communication. Although his fourth DWI was pending at the time of the admonition, OCDC apparently was unaware of his criminal history and the pend-

ing felony charge when it issued the admonition.

This Court now considers the discipline warranted by Stewart's felony conviction.[2] *See In re Zink,* 278 S.W.3d 166, 169 (Mo. banc 2009) (noting this Court's inherent authority to regulate the practice of law and administer attorney discipline).

## II. Standard of Review

Each disciplinary case ultimately stands on its own facts, but the ABA Standards for Imposing Lawyer Sanctions provides guidance for appropriate discipline. *In re Madison,* 282 S.W.3d 350, 360 (Mo. banc 2009); *In re Downs,* 363 S.W.2d 679, 691 (Mo. banc 1963). Following the model laid out in ABA Standard 3.0, four factors are considered in determining the appropriate discipline: (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) aggravating and mitigating circumstances.

■ The guiding principles underlying disciplinary decisions are as follows:

> The purpose of discipline is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession. Those twin purposes may be achieved both directly, by removing a person from the practice of law, and indirectly, by imposing a sanction which serves to deter other members of the Bar from engaging in similar conduct.

*In re Kazanas,* 96 S.W.3d 803, 807–08 (Mo. banc 2003).

---

1. He originally was charged with a class C felony because he was considered an "aggravated offender" due to his three previous DWI convictions, but his second DWI later was removed from the information, reducing the charge to a class D felony. *See* sections

577.010, 577.023. Unless otherwise noted, all statutory references are to RSMo 2000, as amended by Supp.2010.

2. Stewart declined the opportunity to file a brief or participate in oral arguments.

## III. Stewart's Felony Conviction Was A Violation Of Rule 4–8.4(b)

A criminal act by a lawyer that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer is considered professional misconduct under Rule 4–8.4(b). The ABA Standards point out that the injury from such misconduct can include not only harm to clients or the public but also harm to the legal system and the profession. Nonprofessional misconduct can be just as injurious as professional misconduct. *See In re Conner*, 357 Mo. 270, 207 S.W.2d 492, 495 (1948). When a lawyer engages in criminal conduct that reflects adversely on his or her fitness as a lawyer in violation of Rule 4–8.4, that lawyer's conduct inevitably tarnishes the public image of the profession as a whole. *See In re Shunk*, 847 S.W.2d 789, 791 (Mo. banc 1993).

> In our society, lawyers hold a place of special responsibility as advisors and counselors in the law. A judicial admission that a lawyer [committed a felony] is a matter of grave consequence. Such conduct not only brings the lawyer's judgment and honesty into question but erodes public confidence in lawyers and the courts in general.

*Id.* Repeated criminal conduct by an attorney, even when it involves only minor offenses, indicates "indifference to legal obligation." Comment 2 to Rule 4–8.4.

Stewart violated Rule 4–8.4(b) by pleading guilty to driving under the influence of alcohol on four separate occasions, including pleading guilty to a felony. His conduct reflects adversely on his fitness as a lawyer and injures the reputation of the legal profession. The full measure of the injury caused by his repetitive conduct cannot be captured by the fact that, mercifully, he avoided causing any injury or property damage. His conduct showed indifference to the law and to public safety.

Such conduct undoubtedly undermines the public's confidence in the legal system and the profession at large.

## IV. Stewart's Felony Warrants A Suspension

In determining the appropriate sanction in this case, it is necessary to review similar past cases, the disciplinary rules, and the applicable ABA standards.

In *Kazanas*, it was noted that an attorney's conviction for a felony typically would merit disbarment. 96 S.W.3d at 808. And in *In re Frick*, it was stated that "[s]ome acts committed in a non-professional capacity may indicate such a lack of respect for the law and for other members of society that disbarment may be warranted." 694 S.W.2d 473, 480 (Mo. banc 1985). But in *In re Duncan*, this Court found that a suspension was the presumptive sanction for an attorney who had been convicted of a felony. 844 S.W.2d 443, 445 (Mo. banc 1992) (involving an attorney who had failed to file or pay federal income taxes).

Likewise, this Court's Rule 5.21, which details the procedures for suspending attorneys following criminal activities, reflects that the serious nature of a felony conviction justifies suspending an attorney from practice. *See* Rule 5.21(a) (providing that "this Court shall cause to be served on" a lawyer who "has pleaded guilty or nolo contendere to or been found guilty of . . . any felony" "an order to show cause why the lawyer should not be suspended from the practice of law pending the final disposition of any disciplinary proceedings based upon [the misconduct]"); *see also* Rule 5.21(c) (allowing an attorney who commits certain criminal activities to "be subject to discipline by this Court without the requirement of any proceeding").

Under the ABA Standards, disbarment is warranted when criminal conduct is closely related to practice and poses an immediate threat to the public. *See* ABA Standard 5.11(a) (providing that disbarment is generally appropriate when a lawyer engages in serious criminal conduct with an element of "intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft"). But a suspension is considered "generally appropriate when a lawyer knowingly [3] engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.12.

■ Moreover, aggravating and mitigating circumstances are considered in selecting an appropriate discipline. *See* ABA Standard 9.1 (providing that aggravating and mitigating factors may be considered in selecting an appropriate discipline); *Madison*, 282 S.W.3d at 361 (noting that sanctions can be increased based on the presence of aggravating factors); *In re Belz*, 258 S.W.3d 38, 39 (Mo. banc 2008) (noting that this Court always considers mitigating circumstances in determining the correct sanction). Appropriate discipline for an attorney who commits a felony and has substance abuse issues can be affected by mitigating factors, such as the attorney submitting to intensive substance abuse treatment. *See Shunk*, 847 S.W.2d at 792 (noting as mitigating circumstances the attorney's regular attendance at Alcoholics Anonymous and Narcotics Anonymous meetings, his full compliance with his probation terms, and his proper handling of client affairs). Mitigating factors, however, do not necessarily justify a reduced

sanction. *See Kazanas*, 96 S.W.3d at 809 ("[E]ven when mitigating factors exist and where it is unlikely that the attorney will repeat the transgression, certain acts by attorneys so impugn the integrity of the legal system that disbarment is the only appropriate means to restore public confidence in it." (internal quotation marks omitted)).

In Stewart's case, the aggravating factors are his *four* DWI convictions. It is also concerning that he failed to report his criminal conduct to OCDC when he was admonished for diligence and communication issues in 2009. On the other hand, mitigating factors include: his limited prior disciplinary history; his remorse; his ongoing struggle with the disease of alcoholism and his commitment to sobriety, shown by his participation in extensive inpatient and outpatient treatment and his attendance at numerous Alcoholics Anonymous meetings; and his full compliance with the terms of his criminal probation. But while this Court recognizes Stewart's commitment to recovery from substance abuse and notes his apparent ability to insulate his practice of law from the effects of his alcoholism, we cannot ignore the deleterious effect of his conduct on the reputation of the legal profession. *See In re Coleman*, 569 N.E.2d 631, 634 (Ind. 1991) ("The image of a drunken lawyer driving down the highway"—not once, but four times—"does little to serve the profession.").

Considering this Court's precedent, the disciplinary rules, the ABA standards, and the facts in this case, suspension is the appropriate sanction for Stewart's conduct. His felony conviction represents an indifference to the law that merits a strong disciplinary response. His felony convic-

---

**3.** The ABA Standards define "knowledge" as "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."

tion reflects adversely on his fitness as a lawyer, and the repetitive nature of his behavior defeats any suggestion that he embarked on his course of conduct with less than full knowledge of the nature and consequences of his action.

## V.  A Stayed Suspension Is Not Warranted

■ A suspension should be for a period of time no less than six months but not more than three years.  ABA Standard 2.3.  In Stewart's case, OCDC recommends a three-year stayed suspension with a concurrent period of probation.  It points out that this Court has granted stayed suspensions in three recent disciplinary orders involving lawyers who committed alcohol-related driving offenses.  *In re Frahm,* No. SC89822 (Mo. banc 2009); *In re O'Sullivan,* No. SC90235 (Mo. banc 2009); *In re McKeon,* No. SC88868 (Mo. banc 2007).

This Court finds, however, that a stay is not warranted in this case.  In contrast to Stewart's case, *McKeon* involved a single count of misdemeanor driving while under the influence.  And while *Frahm* and *O'Sullivan* involved multiple felony convictions, those cases involved single instances of criminal misconduct.  Further, the felonies of which the attorneys were convicted involved the mental states of recklessness and criminal negligence.[4]  Stewart, however, was convicted of a felony arising out of his *fourth* DWI during an 11–year period, which implicates ABA Standard 5.12's con-

templation of suspension for a lawyer who "knowingly" engages in criminal conduct.

Staying Stewart's suspension for a period of probation would be inconsistent with this Court's previous cases involving felony convictions for multiple DWIs. *Cf. In re Hopkins,* No. SC89163 (Mo. banc 2008) (disbarring an attorney convicted of class C felony DWI who was to be incarcerated for a substantial period of time); *In re Laskowski,* No. SC86555 (Mo. banc 2005) (suspending an attorney without leave to reapply for three years after a conviction of class D felony DWI).[5]  Like the attorneys at issue in *Hopkins* and *Laskowski,* Stewart's felony charge subjected him to the possibility of incarceration for a substantial period of time. Stewart's good fortune in receiving a lenient sentence does not diminish the severity of his conduct for the purpose of assessing the appropriate discipline in his case.

In *Shunk,* this Court suspended indefinitely without leave to reapply for six months an attorney who had been convicted of felony narcotics possession but who had no prior disciplinary history, had not mishandled client affairs, and had not harmed other persons or property through his criminal conduct.  847 S.W.2d at 791.  In assessing the seriousness of the offense, the court noted:

In recent years illicit drug traffic has reached epidemic proportions.  It threatens not only users with addiction but has blighted entire communities with death and violence.  For an attorney who fully comprehends the nature and

---

4.  Frahm was sentenced to two felony counts of reckless aggravated battery.  O'Sullivan pleaded guilty to three counts of second degree assault, a class C felony.

5.  This Court also notes that a suspension is well within the range of sanctions imposed in other states for alcohol-related driving felonies.  *See* Danny R. Veilleux, Annotation, *Mis-*

*conduct Involving Intoxication as Ground for Disciplinary Action Against Attorney,* 1 A.L.R.5th 874 (1992); *see also In re Jones,* 727 N.E.2d 711 (Ind.2000) (six-month suspension warranted for repeat DWI convictions even where attorney voluntarily submitted to treatment for substance abuse and made significant progress in recovery).

consequences of his conduct to become a participant in felony drug trafficking, even as a consumer, is morally reprehensible.

*Id.*

Stewart's conduct deserves similar censure as the conduct at issue in *Shunk.* The damage wrought in our state every year by drunken drivers is well-documented and need not be repeated here, save to recognize that its tragic impact reaches into nearly every community. This Court must insist that attorneys be keenly aware of the parameters the law places on their conduct, and Stewart's repeated disregard for those boundaries simply cannot be excused.

## VI. Conclusion

For the foregoing reasons, Stewart is suspended indefinitely from the practice of law with no leave to apply for reinstatement for six months after the mandate is issued in this case.

PRICE, C.J., WOLFF, BRECKENRIDGE, FISCHER and STITH, JJ., concur.

TEITELMAN, J., concurs in separate opinion filed.

RICHARD B. TEITELMAN, Judge.

Driving while intoxicated not only poses unacceptable risks to others but it is also, as Mr. Stewart's case illustrates, a serious criminal offense. That said, I write separately only to note that the goals of protecting the public and maintaining the integrity of the profession are served only marginally by disciplining an attorney for conduct that does not relate even tangentially to the representation of clients. Disbarment and lengthy suspensions generally should be reserved for those circumstances in which clients are harmed.