

# SUPREME COURT OF MISSOURI
## en banc

*Opinion issued March 21, 2023*

IN RE:  DAN K. PURDY, )
) No. SC99818
Respondent. )

## ORIGINAL DISCIPLINARY PROCEEDING

The Office of Chief Disciplinary Counsel (hereinafter, "OCDC") charged Dan K. Purdy (hereinafter, "Purdy") with multiple violations of the Rules of Professional Conduct.  The Disciplinary Hearing Panel (hereinafter, "the DHP") held an evidentiary hearing and determined Purdy should be disbarred for his conduct.  Purdy rejected the DHP's recommendation and requests this Court impose discipline no greater than an indefinite suspension of his law license with no leave to apply for reinstatement for six months.  Purdy urges this Court to consider the time for which he has been suspended during the pendency of these proceedings and allow him to seek immediate reinstatement.

Following a *de novo* review of the record, this Court finds Purdy's conduct violated Rules 4-1.7(a)(2), 4-8.4(d), and 4-8.4(g) toward six of his clients, totaling eighteen violations.  After consideration of mitigating and aggravating factors, this Court orders Purdy indefinitely suspended with no leave to apply for reinstatement for twelve months.

## Factual and Procedural History

Purdy is an 86-year-old attorney admitted to The Missouri Bar in April 1966.

Purdy's license has been suspended since December 2021 on an interim basis due to a threat of harm. Rule 5.24.[1]

*Incidents at the Vernon County Jail*

In September 2020, the Vernon County Sheriff (hereinafter, "Sheriff") contacted OCDC regarding Purdy's conduct with four, female clients in the jail interview room. Sheriff provided OCDC with video footage of Purdy meeting with his clients on two days. For all of his visits, the video footage depicted Purdy making sexual advances toward his clients and engaging in unwanted and improper sexual touching. This conduct included, but was not limited to, pulling them into his body, reaching underneath their jumpsuits, and kissing them on the mouth.

Following these incidents, officers at the jail interviewed each of the women regarding Purdy's conduct. Each woman confirmed Purdy's sexual advances were unwanted. The women stated they were uncomfortable with his conduct, and one described Purdy as a "little bit of a pervert." The officers confirmed Purdy never told his clients his sexual conduct was in exchange for payment or reduced legal fees.

*Incident in St. Clair County Court*

In March 2021, an assistant prosecuting attorney for St. Clair County contacted OCDC regarding Purdy's conduct in open court. The courtroom's video footage showed Purdy touched his client on her buttocks. The client at issue, however, submitted an affidavit to OCDC stating she did not believe Purdy touched her inappropriately.

---

[1] Rule references are to Supreme Court Rules (2022), unless otherwise stated.

*Incident in Purdy's Vehicle*

In September 2021, Purdy was transporting a client in his vehicle. The client rode in the front passenger seat. The client used her cellular telephone to record a portion of their drive. The video shows that, while he was driving, Purdy reached across the seat, placed his hand inside the client's blouse, and rubbed her breast. The client stated this was unwanted sexual conduct.

*The Disciplinary Hearing Panel*

Based on Purdy's conduct with these six clients, OCDC filed an information against him, charging him with multiple counts of professional misconduct. OCDC and Purdy submitted a "joint stipulation of facts, joint conclusions of law, and joint recommended discipline" to the DHP. In the joint stipulation, OCDC and Purdy stated Purdy should be suspended indefinitely from the practice of law with no leave to apply for reinstatement for twelve months. The DHP then conducted an evidentiary hearing.

Following its hearing, the DHP found Purdy's conduct constituted multiple violations of Rules 4-1.7(a)(2), 4-8.4(d), and 4-8.4(g). The DHP believed Purdy "exhibited a continued pattern or practice of improper and disturbing conduct, which continued, even after the present case was filed against" him. The DHP recognized Purdy was given access to these vulnerable clients due to his role as an attorney, and he could not be trusted to not repeat his prior actions. The DHP recommended Purdy be disbarred.

Purdy rejected the DHP's recommendation. Because Purdy rejected the DHP's recommendation, this Court must determine the appropriate discipline. Rule 5.19(d)(3). Purdy and OCDC stipulated Purdy should be suspended indefinitely with no leave to apply

3

for reinstatement for twelve months, but Purdy now deviates from the amount of discipline he agreed to in the joint stipulations. Instead, Purdy asks this Court to find the appropriate discipline in this case is a six-month suspension, but then give him "credit" for the fifteen months he has been suspended due to threat of harm and allow him to apply for reinstatement immediately.[2]

**Standard of Review**

"This Court has inherent authority to regulate the practice of law and administer attorney discipline." *In re Gardner*, 565 S.W.3d 670, 675 (Mo. banc 2019). "This Court reviews the evidence *de novo*, independently determines all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law." *In re McMillin*, 521 S.W.3d 604, 607 (Mo. banc 2017) (quoting *In re Coleman*, 295 S.W.3d 857, 863 (Mo. banc 2009)). This Court treats the DHP's findings and conclusions as advisory, and it may accept or reject any of the DHP's recommendations. *Id*. "Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed." *In re Kayira*, 614 S.W.3d 530, 533 (Mo. banc 2021) (quoting *In re Farris*, 472 S.W.3d 549, 557 (Mo. banc 2015)).

**Purdy's Conduct**

Based on the record before this Court, this Court finds Purdy committed multiple violations of the Rules of Professional Conduct, as discussed below. :

---

[2] To the extent Purdy believes the delay in disposition of this matter should be credited in his favor, this Court dismisses this argument. He could have filed a motion requesting an accelerated disposition of this matter following his interim suspension. *See* Rule 5.24(e).

4

*Rule 4-1.7(a)(2)*

Rule 4-1.7(a)(2) provides an attorney shall not represent a client when there is a concurrent conflict of interest.[3] This violation occurred when Purdy engaged in unwanted, improper sexual touching of six vulnerable clients. Purdy's personal and sexual interests interfered with his clients' legal needs.

*Rule 4-8.4(d)*

Rule 4-8.4(d) provides an attorney commits professional misconduct by engaging "in conduct that is prejudicial to the administration of justice." Purdy violated this rule by making sexual advances and engaging in unwanted and improper touching of his clients. Purdy placed his sexual interests above his clients' legal needs. This conduct was prejudicial to the administration of justice.

*Rule 4-8.4(g)*

Rule 4-8.4(g) provides an attorney commits professional misconduct by engaging "in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, or marital status." Purdy's sexual advances and engaging in unwanted and improper touching of his clients constituted bias, prejudice, and harassment based on sex.

### Appropriate Discipline

This Court finds by a preponderance of the evidence that Purdy committed the

---

[3] A concurrent conflict of interest occurs when "there is a significant risk that the representation of one or more clients will be materially limited by … a personal interest of the lawyer." Rule 4-1.7(a)(2).

foregoing rule violations, amounting to eighteen acts of professional misconduct. Accordingly, this Court must determine the appropriate discipline to impose. This Court relies on its prior cases and the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1992) (hereinafter, "ABA Standards") when determining the appropriate discipline. *Kayira*, 614 S.W.3d at 533.

This Court has inherent authority to regulate the practice of law and administer attorney discipline." *Id.* at 532 (quoting *Gardner*, 565 S.W.3d at 675). The purpose of imposing discipline "is not to punish the attorney but to protect the public and maintain the integrity of the legal profession. *In re Stewart*, 342 S.W.3d 307, 308 (Mo. banc 2011) (quoting *In re Kazanas*, 96 S.W.3d 803, 807-08 (Mo. banc 2003)). "Those twin purposes may be achieved both directly, by removing a person from the practice of law, and indirectly, by imposing a sanction which serves to deter other members of the Bar from engaging in similar conduct." *Kazanas*, 96 S.W.3d at 808.

Generally, when considering what sanction to impose, this Court considers four factors: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0. The ultimate sanction imposed for an attorney who commits multiple acts of misconduct "should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *Coleman*, 295 S.W.3d at 870.

Purdy committed professional misconduct in violation of Rules 4-1.7(a)(2), 4-8.4(d), and 4-8.4(g). In this case, Purdy's most egregious act of misconduct was his failure

6

to avoid conflicts of interest in violation of Rule 4-1.7(a)(2) by allowing his personal and sexual interests to interfere with his clients' legal needs. "Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA Standard 4.32.

Once misconduct is established, this Court may consider aggravating and mitigating factors when deciding what sanction to impose. ABA Standard 9.1. The record contains evidence of aggravating and mitigating factors. With respect to aggravating factors, Purdy has a history of multiple disciplinary offenses.[4] These disciplinary proceedings established he committed multiple offenses in an ongoing pattern of misconduct. Purdy's conduct affected some of the legal system's most vulnerable persons—women facing criminal charges. Four of the women Purdy assaulted were incarcerated and unable to flee from his unwanted advances, nor were they able to rebuff him as they needed him to assist them in court. Additionally, Purdy has been a practicing attorney for more than fifty-five years and should know his sexual misconduct was inappropriate.

---

[4] In 2008, Purdy was issued a stayed suspension with probation for violating Rule 4-8.4(c) (misrepresentation) after he notarized his client's signature on a beneficiary deed and a power of attorney document despite not actually witnessing the client sign the documents. Purdy successfully completed probation in 2010. Also, in 2008, Purdy was admonished for violating Rule 4-1.4 (communication). In 2000, Purdy was admonished for violating Rule 4-1.15 (safekeeping property) and Rule 4-5.3 (responsibilities regarding nonlawyer assistants). In 1999, Purdy was admonished for violating Rule 4-1.3 (diligence) and Rule 4-1.4 (communication). In 1997, Purdy was reprimanded for violating Rule 4-1.1 (competence), Rule 4-1.3 (diligence), and Rule 4-1.4 (communication). In 1984, Purdy was admonished for improper conduct in the representation of his clients' interests and improper handling of trust funds.

In mitigation, when confronted with the evidence of his misconduct, OCDC states Purdy made a full and free disclosure to the disciplinary board. Purdy submitted multiple letters attesting to his good character and reputation, including a letter from the 27th circuit clerk stating Purdy routinely travels statewide to represent indigent clients. Finally, "[e]vidence of good character is more likely to be a mitigator when the attorney has also admitted to the misdeeds and shows some remorse." *Gardner*, 565 S.W.3d at 679-80. OCDC and Purdy's joint stipulation states Purdy was remorseful for his conduct. The DHP, however, found Purdy's testimony that he would not allow similar acts to occur in the future to be disingenuous because he continued his pattern of improper sexual conduct toward vulnerable clients even after this case was filed against him.

This Court must impose significant discipline to maintain the public's trust and protect the integrity of the legal system. Purdy's request that he need not be further disciplined because he has been suspended for more than a year pursuant to Rule 5.24 is inappropriate. Alternatively, Purdy seeks an indefinite suspension with only six months' leave before he is eligible to be reinstated. Purdy references *In re Littleton*, 719 S.W.2d 772 (Mo. banc 1986), and *In re Howard*, 912 S.W.2d 61 (Mo. banc 1995), to support a shortened suspension time.

In *Littleton*, an attorney was hired to represent a woman (hereinafter, "Client") who was arrested for driving while intoxicated. *Littleton*, 719 S.W.2d at 774. When the attorney visited Client in jail, the attorney attempted to pull Client to him. *Id*. Client rebuffed his advancements by moving around the table. *Id*. During at least one other instance when the attorney visited Client in jail, the attorney again made similar advances. *Id*. After

8

Client was released, the attorney provided Client a ride in his vehicle. The attorney brushed his hand across her breasts. *Id*. Client succeeded in stopping these advances by exiting the vehicle. *Id*. The attorney also accepted funds from Client's bond but claimed that money as fees for his legal services. *Id*. at 776. The Court determined, due to the multiple breaches of professional conduct and the "cumulative nature" of his transgressions, the attorney was suspended from the practice of law with leave to apply for reinstatement after six months. *Id*. at 778.[5]

In *Howard*, after being hired by a couple to represent them on an insurance claim, the attorney suggested the wife (hereinafter, "Wife") accompany the attorney on personal trips while her husband served in the army. *Howard*, 912 S.W.2d at 62. The attorney attempted to pull Wife into him and kiss her. *Id*. Wife spurned the attorney's sexual advances. *Id*. The attorney also represented a mother (hereinafter, "Mother") seeking to collect child support. *Id*. After refusing the attorney's requests to join him in his office for "a few drinks" and "a little loving," the attorney told Mother he would not appear in court for her unless she either paid him more money or had sex with him. *Id*. This Court indefinitely suspended the attorney with leave to apply for reinstatement after six months. *Id*. at 64.

---

[5] Of note, there was a dissent in *Littleton*, arguing the suspension of one who makes sexual advances toward a client "is not a person ethically qualified to represent the public in legal matters." *Id*. at 779 (Welliver, J., dissenting). In making his case for disbarment, Judge Welliver argued, "It is inconceivable that we will deprive the public of adequate legal representation by disbarring a few of those who prove themselves unqualified to represent the public." *Id*. at 780. "Sexual harassment and sexual assault of women are not among the qualifications for a license to practice law." *Id*.

Purdy argues his conduct was less egregious than the attorneys in *Littleton* and *Howard*. This Court disagrees and finds OCDC's stipulation for discipline of suspension for an indefinite period with no leave to apply for reinstatement for twelve months consistent with the ABA Standards and discipline imposed by this Court in prior cases. Purdy not only attempted to sexually assault female clients, he actually did so. Purdy's assaults happened multiple times with multiple clients in multiple situations over an extended period of time. Purdy's unwanted sexual assaults happened in the jail, in open court, and in his private vehicle. Further, Purdy's clients either did not know or did not realize they could repudiate his sexual advances. Purdy fails to grasp the severity of his conduct or these charges. Rather than admitting his conduct was inappropriate and taking responsibility for his actions, Purdy stated he believed his clients were "enticing" him. Purdy's qualified, after-the-fact remorse is disingenuous. Accordingly, this Court finds insufficient mitigating factors to lessen the discipline imposed.

"The privilege to practice law is only accorded those who demonstrate the requisite mental attainment and moral character." *Farris*, 472 S.W.3d at 562 (quoting *In re Haggerty*, 661 S.W.2d 8, 10 (Mo. banc 1983)). In light of Purdy's interim suspension of fifteen months and in accordance with OCDC's stipulated discipline and ABA Standards, this Court indefinitely suspends Purdy from the practice of law with no leave to apply for reinstatement for twelve months.[6] This discipline is "designed to correct any antisocial

---

[6] Applying for reinstatement is not an automatic process. An attorney seeking reinstatement must, *inter alia*, demonstrate the "cause for the suspension … has abated, earn a passing grade on multistate professional responsibility examination, and complete at least 15 hours of continuing legal education credit. Rule 5.28(b). The attorney

10

tendency on the part of [Purdy] as well as to deter others who might tend to engage in similar violations." *Id.* (quoting *In re Staab*, 785 S.W.2d 551, 554-55 (Mo. banc 1990)).

**Conclusion**

Purdy is suspended indefinitely from the practice of law with no leave to apply for reinstatement for twelve months.

_____
GEORGE W. DRAPER III, Judge

Russell, Breckenridge and Ransom, JJ., concur;
Fischer, J., dissents in separate opinion filed;
Wilson, C.J., and Powell, J., concur in opinion of Fischer, J.

---

petitioning for reinstatement "must establish, by clear and convincing evidence, that the [petitioner] is of good moral character, is fit to practice law, and the best interest of the public will be served by reinstatement of the [petitioner's] license to practice law." Rule 5.28(i). Additionally, a petition for reinstatement is referred to OCDC for "a character and fitness investigation of the petitioner, and a report, and a recommendation." Rule 5.28(j).



# SUPREME COURT OF MISSOURI
## en banc

IN RE: DAN K. PURDY,          )
                              )     No. SC99818
          Respondent.       )

## DISSENTING OPINION

I must dissent. I, like the Disciplinary Hearing Panel that heard the evidence in this case, am of the opinion that Dan Purdy should be disbarred. In light of the egregious and outrageous conduct perpetrated, I am deeply distressed that this Court merely indefinitely suspends Mr. Purdy with no leave to apply for reinstatement for one year.

Implicit in the principal opinion's analysis is that Mr. Purdy only needs to be indefinitely suspended with no leave to apply for reinstatement for one year because of his advanced age. In my view, neither the race, gender, ethnicity, nor age of an attorney should be taken into consideration to determine appropriate discipline. In my view, Mr. Purdy's conduct, which was clearly and explicitly depicted in the video evidence, warrants disbarment.

As correctly recognized by the principal opinion, "[t]he purpose of imposing discipline is not to punish the attorney but to protect the public and maintain the integrity of the legal profession." *Slip op*. at 6.[1]  Disbarment would not be meant to punish Mr.

---

[1] But, viewed as punishment—which is all this suspension can possibly amount to—this suspension is nothing but a gentle slap on the wrist.

Purdy in his advanced age, but to protect the public and preserve the integrity of the legal profession. Mr. Purdy's conduct is unbecoming of a lawyer and of the legal profession, and anything less than disbarment will not protect the public or preserve the legal profession.

As recognized by the principal opinion, not only did Mr. Purdy sexually assault six female clients, he "exhibited a continued pattern or practice of improper and disturbing conduct, **which continued, even after the present case was filed against him**" and "Purdy's testimony that he would not allow similar acts to occur in the future [is] disingenuous because [Purdy] continued his pattern of improper sexual conduct toward vulnerable clients even after this case was filed against him. *Slip op*. at 3, 8. (internal quotations omitted) (emphasis added). It is inconceivable how the principal opinion can find, with these aggravating factors, and "insufficient mitigating factors to lessen the discipline imposed[,]" that disbarment is not the appropriate discipline. *Slip op*. at 10.

If this Court were to follow a policy of firm discipline for those attorneys who sexually harass and assault their clients, we might eventually fulfill our secondary obligation—to protect the reputation and integrity of the profession by assuring the public that they can have confidence in the remainder of the lawyers who are out there trying to honestly and effectively represent their clients.

The Missouri Bar had 17,000 lawyers when I took my oath of admission in the summer of 1988. As of 2023, The Missouri Bar has at least 30,700 licensed lawyers, approximately one lawyer for every 200 people in the state. It is inconceivable that we will deprive the public of adequate legal representation by disbarring a few of those who prove

2

themselves unqualified to represent the public because they attempt to seek sexual gratification from their clients.

There may have been a time when a temporary suspension was an adequate punishment for sexually assaulting or harassing a client, vulnerable or otherwise, *see In re Littleton*, 719 S.W.2d 772 (Mo. banc 1986), but, in my view, that time is long gone.

This Court should disbar Mr. Purdy.

_____
Zel M. Fischer, Judge

3