

# SUPREME COURT OF MISSOURI
## en banc

*Opinion issued January 15, 2019*

IN RE:  R. SCOTT GARDNER,    )
                              )      **No. SC97207**

        **Respondent.**        )

### ORIGINAL DISCIPLINARY PROCEEDING

Section 473.153,[1] governing payment of personal representative fees, requires personal representatives to obtain prior approval from the probate division to be paid all or part of their personal representative fees before final settlement.  Here, the probate division approved early payment of only part of R. Scott Gardner's personal representative fee request and specifically directed the remainder of his fees would be paid only at final settlement.  Mr. Gardner nonetheless paid himself most of the remainder of his fees prior to final settlement, in violation of the circuit court's order and the relevant statute. This violation was made worse when Mr. Gardner failed to inform the court of his payments to himself prior to or even in the final settlement.  His conduct was knowing and, considered without regard to mitigating factors, would merit suspension.  That he was actually entitled to the fees, there was no harm to the estate, and he had no dishonest motive but rather incorrectly believed local practice would permit his

---

[1] All statutory references are to RSMo 2000 unless otherwise noted.

conduct despite the rule and statute do not lessen the violations but serve to mitigate the discipline imposed. Also mitigating are Mr. Gardner's remorse, good character, and lack of significant disciplinary history. This Court, therefore, imposes an indefinite suspension with no leave to reapply for six months, but stays the suspension and places Mr. Gardner on probation for one year under conditions set by this Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

R. Scott Gardner was admitted to practice in Missouri in 1983. After licensure, Mr. Gardner began practicing at his family law firm in Sedalia. Currently, he is a solo practitioner. He has maintained a significant probate practice since 1988 but has been a personal representative on only a few occasions. In 2014, Mr. Gardner was appointed as personal representative for the estate of Ethel M. Hall, which was pending in the probate division of the Pettis County circuit court.

The estate was under supervised administration.[2] On February 18, 2015, Mr. Gardner submitted an amended motion requesting payment of a partial fee of $30,070 pursuant to section 473.153. The circuit court first issued an order overruling the motion:

> The Court considers the motion for approval of partial payment of fees. The motion is denied for two reasons. The first is that the motion asks for 5% of total reimbursements which exceeds the amount authorized by § 473.153 RSMo. Secondly, receiving a fee when an estate closes is a powerful incentive to encourage a PR to get the estate closed. Were the Court to authorize early payments of partial fees, this incentive would be lost. This Court desires to keep this incentive in place.

---

[2] Supervised administration is distinct from independent administration authorized by will as permitted under sections 473.780 to 473.845.

Later the same day, the court issued a second order permitting payment of almost half of the requested fee:

> The Court considers the amended petition for fees. The personal representative is authorized to pay himself an advance personal representative fee in the amount of $15,000.00. This amount shall be deducted from the final calculation of fees due him at the close of the estate.

Mr. Gardner paid himself the $15,000 permitted by the court's order.

On or about June 25, 2015, Mr. Gardner wrote a second check to himself from the estate account in the amount of $15,466. The parties agree this would have been the remainder of the fee to which he would have been entitled once the estate was settled. He deposited the money into his law firm account. Despite the circuit court's prior order stating the final calculation of the remainder of Mr. Gardner's fee would occur "at the close of the estate," Mr. Gardner did not file a final settlement or otherwise seek to close the estate at the time he paid himself the remainder of his fee. Neither did he file a written motion asking for approval of early payment of the remainder of his fee.

Mr. Gardner later testified he acted without court approval and in advance of the final settlement because, after talking to the estate's accountant, he concluded the estate could avoid certain income taxes if it paid out all claims and fees and finally settled the estate before what he then believed was the end of the tax year on June 30, 2015. In fact, however, he failed to settle the estate by the end of June after he got caught up in preparing for a July trial in another matter. Mr. Gardner nonetheless had paid himself his final fee without informing the court he had done so, and he did so at a time and in a

3

manner inconsistent with the court's prior order.[3]

Mr. Gardner testified he realized he needed to let the court know what had happened and so went by the judge's office without a prior appointment on a couple of occasions but did not locate the judge on those visits. He said he continued to go by the judge's office during the following Fourth of July holiday week but also was unsuccessful in seeing the judge. So far as the record shows, Mr. Gardner did not attempt either to call the court to inform the judge orally what he had done or to set an appointment to see the judge, nor did he file a written motion for after-the-fact approval of the payment. He then forgot about the fee issue in the press of other business and did not follow up further.

Mr. Gardner filed his final settlement of the estate two months later, on September 3, 2015. The final settlement includes a spreadsheet showing the assets, debits, and credits of the estate, fees paid to the personal representative, and the distributions to the estate beneficiaries. In the final settlement spreadsheet, Mr. Gardner listed the correct total amount of fees due to him, $32,604. He also noted $15,000 of this fee already had been paid to him on February 26, 2015, but he did not note he had disbursed to himself the remainder of the fee in June 2015 as well. Attached to this final settlement, however,

---

[3] Mr. Gardner says he based this belief about tax savings on an informal conversation with his accountant, James Bales, in June 2015. In a letter written to the disciplinary hearing panel (DHP) five months later, Mr. Bales stated Mr. Gardner saved $1,054 in federal tax liability and $338 in Missouri tax liability when he paid himself early. Despite Mr. Gardner's belief the fiscal year was imminently coming to a close on the one year anniversary of Ms. Hill's death, the office of chief disciplinary counsel (OCDC) also submitted evidence the fiscal year for the estate ended a month earlier, in late May, negating the urgency of the June withdrawals.

Mr. Gardner included bank records of disbursements from the estate that did show the June 2015 payment to himself of $15,466.

On September 10, 2015, upon reviewing the filing and attachments, the circuit court discovered the advance payment and ordered Mr. Gardner to appear on September 15, 2015, to show cause why he should not be held in contempt and removed as personal representative in light of his early advance payment to himself without court permission and in violation of the court's order. Mr. Gardner then went to the judge's office and spoke with him about the early payment, and the circuit court canceled the hearing.

The next day, Mr. Gardner finally submitted a motion requesting approval to pay himself the total personal representative fee. The circuit court nonetheless issued a contempt order on September 14, 2015, and reduced Mr. Gardner's fee by $2,138. The following month, however, the circuit court set aside this contempt order and entered a revised order directing Mr. Gardner to restore the $15,466 he had paid himself the prior June and appear before the court to address his removal as personal representative.[4]

On March 21, 2017, the circuit court appointed a different attorney as successor personal representative. The successor personal representative and Mr. Gardner entered into a stipulation for the payment of personal representative fees for the estate, which the court approved. Under the stipulation, the successor personal representative received $2,500 and Mr. Gardner received $15,105.

---

[4] This later hearing apparently did not occur because, in the interim, Mr. Gardner contested several of the circuit court's rulings, which eventually resulted in a change of judge.

5

The judge later testified Mr. Gardner apologized during their conversation and asked for permission to file a revised petition for fees. The judge also testified he had no issue with the amount of the fee and did not believe Mr. Gardner was trying to be paid twice. Instead, the judge was concerned with the length of the delay between the time Mr. Gardner advanced the rest of his fee to himself and the time Mr. Gardner filed the final settlement. The judge acknowledged attorneys occasionally disburse fees to themselves just before filing the final settlement, and Mr. Gardner said at the time he was planning to close the estate within a few days. But, the judge testified, that is not what happened here:

> The way it works is, when the attorney files the final settlement, usually, that subsection right there describes the fees they're proposing, and so I authorize it, but I never actually look and see whether the proposed check to themselves is actually -- was cashed the day before or the week before. When it's right around the final settlement, I just assume that's the reasonable protocol. It was only because this was several months earlier that caused me concern.

The judge later testified he believed Mr. Gardner's reduction in fees was a "fair resolution of the personal representative fee issue." The judge also testified he thought Mr. Gardner was a good man who worked to make a difference in his community.

On September 29, 2017, OCDC filed an information alleging Mr. Gardner had committed professional misconduct in violation of Rule 4-1.15 (failing to safekeep client property); Rule 4-3.3 (making a false statement of fact to a tribunal); Rule 4-3.4(c) (taking a fee without court authorization and in violation of the circuit court's February 18, 2015 order); Rule 4-8.4(c) (engaging in deceitful conduct in taking a personal representative fee without court authorization).

6

Mr. Gardner testified it was his firm's practice to file an application for court approval before paying out fees from an estate. Mr. Gardner also acknowledged he made a mistake when he failed to list the payment on the final settlement spreadsheet. Mr. Gardner said this occurred because he had prepared the draft of the final settlement in June 2015, before he discussed tax liability with the accountant. After hearing about the possibility of avoiding a tax liability, Mr. Gardner testified he took the payment and attached a copy of the check to the final settlement paperwork, but forgot to revise the listed payment totals within the form itself. He testified he believed the clerk would see the check when looking at the copy of the bank records he included, and he did not intend to hide the payment.

During the proceedings, Mr. Gardner presented evidence from a former associate circuit judge who had presided over probate matters in the county from 1975 to 2006. Both the former judge and Mr. Gardner testified they believed Mr. Gardner could lawfully pay himself a personal representative fee without a court order because it was a claim against the estate under section 473.433. Finally, Mr. Gardner submitted affidavits from attorneys and judges who have experience working with him and can testify to his honesty and character. These affidavits averred Mr. Gardner was "a man of high moral character and integrity" with a reputation for being "honest and above-board" and stated Mr. Gardner "will not seize an unfair advantage or engage in sharp dealing. He is always prepared, professional and friendly."

The disciplinary hearing panel found Mr. Gardner violated Rules 4-1.15, 4-3.3(a), 4-3.4(c), and 4-8.4(c) of the rules of professional conduct. It recommended an order of

7

suspension with no leave to apply for reinstatement for six months.

## II.    STANDARD OF REVIEW

This Court has inherent authority to regulate the practice of law and administer attorney discipline.  *See Rule 5*; *In re Zink, 278 S.W.3d 166, 169 (Mo. banc 2009).*  The DHP's findings of fact, conclusions of law, and recommendations are advisory.  *In re Oberhellmann, 873 S.W.2d 851, 852 (Mo. banc 1994).*  "This Court [in a disciplinary proceeding] reviews the evidence de novo, independently determining all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law."  *In re Snyder, 35 S.W.3d 380, 382 (Mo. banc 2000) (Citations omitted).*

## III.    MR. GARDNER'S DISBURSAL OF HIS PERSONAL REPRESENTATIVE FEE EARLY AND CONTRARY TO COURT ORDER VIOLATED THE DISCIPLINARY RULES AND MERITS DISCIPLINE

This Court begins its analysis by considering whether the facts show counsel violated any disciplinary rules.  It then turns to the question of the appropriate discipline.

### A. Mr. Gardner's Actions Violated the Rules of Professional Conduct

This case does not involve self-dealing or misappropriation.  There is no contention Mr. Gardner was attempting to obtain a second fee or sought more money than he had earned.  Further, there is no contention Mr. Gardner's conduct caused harm to the estate.  The issue before this Court is whether Mr. Gardner knowingly violated a court order and statute prohibiting him from paying himself his fees prior to the final settlement of the estate and, if so, whether this violates the rules of professional conduct.  For those serving as personal representatives, the probate code sets out specific procedures governing the

8

fees to which a personal representative is entitled and the process to be followed before

being entitled to those fees:

1.  … When there is only one personal representative he shall be allowed as the minimum compensation for his services the following percentages of the value of the personal property administered and of the proceeds of all real property sold under order of the probate court:

    ….

3.  Attorneys performing services for the estate at the instance of the personal representative shall be allowed out of the estate as the minimum compensation for their services sums equal to the percentages set forth in the schedule contained in subsection 1 of this section.

    ….

6.  ***Compensation*** properly allowable hereunder may be allowed to personal representatives or attorneys ***upon final settlement***, or ***partial compensation upon application therefor, at any time or times during administration***.

*§ 473.153* (emphasis added).

As is evident, section 473.153.6 specifically provides a personal representative is

*not* entitled to payment of even a partial fee before final settlement in the absence of an

application for approval of the early payment.  Mr. Gardner showed his awareness of this

requirement when he sought and obtained court approval for a partial payment of his fee

in February 2015, pursuant to section 473.153; initially sought informal after-the-fact oral

approval for the additional payment in June 2015; and ultimately filed a motion for

approval of these payments following final settlement.

Mr. Gardner's only explanation for his conduct is his contention he believed he

could pay himself his fee without court approval because his fee request would be treated

as a claim under the statutes governing claims of creditors against the estate. *See*

*§§ 473.360-473.444*.  Personal representatives are not mere creditors of the estate. They

9

have a fiduciary obligation to the estate and must avoid conflicts of interest. *Estate of Keen, 488 S.W.3d 73, 92 (Mo. App. 2016).* For this reason, Missouri probate statutes require court approval of many of the personal representative's actions in a supervised estate.[5] Section 473.153 also specifically provides when and how personal representatives are paid fees for work done as a personal representative. It gives the probate division the authority to approve such fees and imposes on the personal representative the obligation to obtain such approval. *Id.*

It is well-established "where one statute deals with the subject in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute." *Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 668 (Mo. banc 2010).* Section 473.153, which specifically governs fees paid to personal representatives, therefore, is the governing statute. No personal representative reasonably could believe he could instead pay himself his fee without court approval. And indeed, Mr. Gardner's February application for court approval of early payment of his partial fee shows he was well aware of his statutory obligation to obtain court approval.

The misconduct is compounded by the fact Mr. Gardner's conduct violated the circuit court's order specifically directing Mr. Gardner he could not take the remainder of

---

[5] The hallmark of a supervised administration is direct court supervision over many of the personal representative's actions. For example, a court order is required for the sale of property (except when the will authorizes power of sale), *§ 473.457,* and the partial distribution of property. *§ 473.613.* In a supervised estate, personal representatives must prepare the final settlement of the estate accompanied by "vouchers" verifying every disbursement of the personal representative for review by the court. *§ 473.543.* The personal representative may close the estate and make final distributions only after the court has reviewed and approved this final settlement. *§ 473.583.*

his fee until final settlement. Mr. Gardner's suggestion the court's second order permitting him to take $15,000 of his fee before final settlement also *sub silentio* removed the prohibition in the court's first order on paying himself the remainder of his fee whenever he wanted is not supported by the language of either order. To the contrary, the second order stated:

> the Court considers the amended petition for fees. The personal representative is authorized to pay himself an **advance** personal representative fee in the amount of $15,000. This amount **shall be deducted from the final calculation of fees due him at the close of the estate**.

(Emphasis added). This language can be interpreted only as saying the remainder of Mr. Gardner's fees would not be calculated and due him until "the close of the estate."

Mr. Gardner violated Rule 4-3.4(c) when he took a personal representative fee without court authorization and in violation of the circuit court's February 18, 2015 order. Mr. Gardner also violated Rule 4-1.15 by failing to safekeep client property when he withdrew money for personal representative fees without court authorization.[6] This conduct, as well as Mr. Gardner's submission of a ledger as part of the final settlement which failed to list the unauthorized payment, also violated Rule 4-3.3, which prohibits making a false statement of fact to a tribunal, and Rule 4-8.4(c), which prohibits engaging in deceitful conduct.

---

[6] Further, even were it appropriate to treat Mr. Gardner's personal representative fees as claims against the estate, he still could not have paid himself his own fees. To avoid the potential conflict of interest when there is only one personal representative, section 473.423 requires "the court shall appoint some suitable person as administrator ad litem to appear and manage the defense" against the claim.

11

**B. A Stayed Suspension is the Appropriate Discipline in Light of the Absence of Dishonest or Selfish Motive**

In determining appropriate discipline, this Court is guided by two key principles:

> The purpose of discipline is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession. Those twin purposes may be achieved both directly, by removing a person from the practice of law, and indirectly, by imposing a sanction which serves to deter other members of the Bar from engaging in similar conduct.

*In re Kazanas, 96 S.W.3d 803, 807-08 (Mo. banc 2003).*

In furtherance of these principles, this Court looks at the individual facts and "considers the ethical duty violated, the attorney's mental state, the extent of actual or potential injury caused by the attorney's misconduct, and any aggravating or mitigating factors." *In re McMillin, 521 S.W.3d 604, 610 (Mo. banc 2017).* This Court looks for guidance from the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) and applies those standards and its prior cases to those facts. *In re Madison, 282 S.W.3d 350, 360 (Mo. banc 2009).*[7]

**1. Mr. Gardner's Conduct was in Part Knowing and in Part Negligent**

The first issue this Court considers is the state of mind with which the attorney acted in committing the rule violations. The recommended discipline for violations under the ABA Standards differs based on whether the lawyer acted intentionally, knowingly, or negligently. *ABA Standards § 3.0*; *see, e.g. In re Forck, 418 S.W.3d 437, 442 (Mo. banc 2014).* Generally, the baseline discipline for intentional misconduct is

---

[7] *Accord In re Belz, 258 S.W.3d 38, 42 (Mo. banc 2008)*; *In re Crews, 159 S.W.3d 355, 360-61 (Mo. banc 2005)*; *In re Griffey, 873 S.W.2d 600, 603 (Mo. banc 1994).*

12

disbarment, for knowing misconduct is suspension, and for isolated instances of negligent misconduct is a reprimand. *See generally ABA Standards §§ 4.1; 5.1; 6.1; 6.2.*

"Intention" is defined as "the conscious objective or purpose to accomplish a particular result. *ABA Standards, Definitions*. "Knowledge" is defined as "a conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a result." *Id*. "Negligence" is defined as "a failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in that situation." *Id*. When an attorney has committed multiple acts of misconduct, "the ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *In re Coleman, 295 S.W.3d 857, 870 (Mo. banc 2009).*

Mr. Gardner concedes he withdrew the remainder of his fees from the estate knowing he did not have court permission to do so. He maintains, however, he did not know this was impermissible. Mr. Gardner contends he was at most negligent in believing he could withdraw the fees without court permission, and he correctly points out the estate suffered no injury as he only took the fee to which he would have been entitled. Mr. Gardner also argues he did not knowingly submit false information but instead inadvertently omitted relevant information in his final settlement.

This Court agrees the record shows Mr. Gardner's misconduct was an isolated instance and does not show an intent on his part to take monies to which he ultimately

would not have been entitled. This Court credits Mr. Gardner's statement he believed it would not be a problem to withdraw the payment a few days early, because the payment would allow him to settle the estate very shortly thereafter and so save taxes for the estate. The Court further finds his conduct reflects negligence in failing to familiarize himself with the law governing when and how a personal representative may obtain fees. This Court also finds Mr. Gardner's failure to list his unauthorized payment in the final settlement to be negligent rather than intentional, in light of his attachment of the check showing the payment and his explanation he had forgotten to update the previously prepared settlement form.

But this Court finds Mr. Gardner's claim he thought the specific statute governing payment of personal representative fees did not apply to him is not credible. This Court further finds his claim the circuit court's order did not prohibit him from taking the fee early to be misleading and his conduct in seeking approval and then taking the fee when he could not find the judge to obtain approval, as well as his other conduct showing such approval was needed, show Mr. Gardner knew he took the fee without authorization and in violation of the February order. This Court finds he did so believing it was a minor issue, because it is conceded he was entitled to the fee as soon as he closed the estate, and he believed it was local practice to allow such payments within a few days before filing a final settlement. Once Mr. Gardner realized the estate would not be closed by the end of June 2015, however, he still did not obtain court approval or file a written motion explaining what had happened in writing. Instead, he failed to act until after the circuit court discovered the situation months later.

14

Mr. Garner's conduct, therefore, was in part negligent and in part knowing. In keeping with the principle the discipline will match the most serious misconduct, this conduct considered alone would merit suspension as the presumptive result for these violations. *ABA Standards § 6.22* ("Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with the legal proceeding").

### 2. Mitigating Factors Support Imposition of a Stayed Suspension

After determining what rules were violated and the baseline discipline for those violations, this Court considers aggravating and mitigating factors in determining the appropriate discipline. *In re Belz, 258 S.W.3d at 39*. "Mitigating factors do not constitute a defense to a finding of misconduct. But they may justify a downward departure from the presumptively proper discipline." *In re Farris, 472 S.W.3d 549, 563 (Mo. banc 2015)* (citations omitted). Several mitigating factors apply to Mr. Gardner and justify staying the suspension otherwise appropriate for his misconduct.

Most importantly, there is no evidence Mr. Gardner acted with a selfish or dishonest motive. Although the dissent suggests Mr. Gardner was acting for his own financial benefit, Mr. Gardner did not take more money than he earned. There is no evidence to suggest Mr. Gardner took the fees early because he was suffering personal financial difficulties or because he needed the funds early for cash-flow purposes. The record does not show any self-serving motivation as Mr. Gardner did not, in fact, benefit more from taking the funds in June than if he had waited to take the funds when he filed

15

the settlement two months later. Instead, the evidence shows Mr. Gardner undertook this early payment after speaking with the tax advisor and then failed to immediately inform the circuit court out of carelessness and an erroneous belief minor deviations from the statutory procedure would be acceptable even if not proper. *Cf. In re Farris, 472 S.W.3d at 565* (dishonest motive when an attorney was "siphoning trust account funds into his office account and paying personal, non-office related bills and expenses"); *In re Ehler, 319 S.W.3d 442, 452 (Mo. banc 2010)* (selfish motive when an attorney "repeatedly converted client funds for her own personal use.").

That no clients were harmed by Mr. Gardner's misconduct is also a long-recognized and important mitigating factor. *In re Weier 994 S.W.2d 554, 558 (Mo. banc 1999)*; *In re Cupples, 979 S.W.2d 932, 937 (Mo. banc 1998)*. The evidence before the Court also shows evidence of good character, a mitigating factor under the ABA Standards. *ABA Standards § 9.32(g)*.

Further, Mr. Gardner has an excellent record as an attorney. The judge whose order Mr. Gardner violated testified Mr. Gardner was a good man who worked to make a difference in his community, and this was confirmed by the affidavits filed by other judges and lawyers. Mr. Gardner's conduct in this instance clearly was a deviation from his normal behavior and in part due to his unfamiliarity with the rules governing personal representatives.

Evidence of good character is more likely to be a mitigator when the attorney has also admitted to the misdeeds and shows some remorse. *See In re Stewart, 342 S.W.3d 307, 311 (Mo. banc 2011)*; *In re Frick, 694 S.W.2d 473, 480 (Mo. banc 1985)* (showing

16

of remorse is a mitigating factor); *ABA Standards § 9.32(l)*. Mr. Gardner showed remorse for his conduct. He openly testified with regret for failing to submit the final settlement immediately after his payment to himself and for failing to modify the settlement to show the payment, stating "that was completely a mistake on my part," and "I thought I -- I really truly thought it was in there. And I just flat screwed up." This Court also finds Mr. Gardner displayed a cooperative attitude toward the proceeding. *See ABA Standards § 9.32(e)* ("full and free disclosure to disciplinary board or cooperative attitude during proceedings" is a mitigating factor).

Mr. Gardner does have substantial experience as an attorney, which is a minor aggravating factor, and, as the dissent notes, he agreed to one prior admonition years ago regarding his probate practice, but he has never has been the subject of discipline imposed by this Court. *See ABA Standards §§ 9.22 (a) and (i)*; *Rule 5.16*. And he did violate the circuit court order. But, while the dissent says this mandates a non-stayed suspension regardless of other mitigators, to do so would disregard the importance of these other mitigating factors. It also misapprehends Mr. Gardner's state of mind in undertaking the premature payment of his fees. His conduct in taking the fees was not a disregard of a court order in an attempt to mislead the court. To the contrary, Mr. Gardner was required to and did submit the final settlement, which included a copy of the check paying himself the remainder of the fees then owed. It seems evident he erroneously and negligently believed this conduct would be acceptable.

While meriting the serious sanction of suspension, his violation of the circuit court's order should not by itself prohibit staying of the suspension. The aggravating

17

factor highlighted by the dissent is outweighed by the mitigating factors noted. The primary purposes of discipline are to protect the public, the legal system, and the legal profession. *Weier, 994 S.W.2d at 561*. A stayed suspension serves those purposes.

## IV. CONCLUSION

For the foregoing reasons, Mr. Gardner is suspended indefinitely from the practice of law with no leave to apply for reinstatement for six months. Execution of the suspension is stayed, and he is placed on a one year term of probation to be completed in accordance with the conditions imposed by this Court.

_____
**LAURA DENVIR STITH, JUDGE**

Draper, Russell and Breckenridge, JJ., concur;
Powell, J., dissents in separate opinion filed;
Fischer, C.J. and Wilson, J., concur in opinion
of Powell, J.

18



# SUPREME COURT OF MISSOURI
## en banc

IN RE:  R. SCOTT GARDNER,     )
                                  )       No. SC97207
         Respondent.        )

### DISSENTING OPINION

I respectfully dissent to draw attention to the gravity of Mr. Gardner's misconduct, which the principal opinion understates by staying Mr. Gardner's suspension. Mr. Gardner knowingly violated a court order when he took the remainder of his personal representative fee from his client's estate before the estate was closed. This gross misconduct caused damage to the integrity of the legal profession and diminished public confidence in our system of justice. This Court, therefore, should suspend indefinitely Mr. Gardner from the practice of law with no leave to apply for reinstatement for six months.

I concur with the principal opinion's conclusion that Mr. Gardner violated Rule 4-3.4(c) when he took the remainder of his personal representative fee from a probate estate without court authorization and in knowing violation of a circuit court order. I also concur with the principal opinion's conclusion that Mr. Gardner violated Rule 4-1.15 by failing to safekeep client property, Rule 4-3.3 by making a false statement to a tribunal, and Rule

4-8.4(c) by engaging in deceitful conduct. I write separately, however, because a stayed suspension is not the appropriate sanction for Mr. Gardner's misconduct.

"[T]he purpose of disciplinary proceedings is to protect the public and maintain the integrity of the legal profession." *In re Waldron*, 790 S.W.2d 456, 457 (Mo. banc 1990). To maintain the integrity of the legal profession, this Court should not turn a blind eye to Mr. Gardner's serious misconduct by staying his suspension and placing him on probation. Instead, Mr. Gardner's license to practice law should be suspended indefinitely for paying himself the remainder of his personal representative fee after the circuit court specifically denied his request for the entire fee until the estate was closed.[1] Mr. Gardner not only violated § 473.153.6,[2] as the principal opinion accurately articulates, but he also knowingly disregarded the circuit court's order when he pocketed more then $15,000 before his client's estate was closed. Although Mr. Gardner claims his conduct conformed to local practice, local practice cannot and does not justify the violation of a statute or a circuit court order. *See Rose v. State Bd. of Registration for Healing Arts*, 397 S.W.2d 570 (Mo.

---

[1] Mr. Gardner filed two motions with the circuit court seeking approval of the payment of his personal representative fees in the amount of $30,070. The circuit court denied Mr. Gardner's request stating:

> The [initial] motion is denied … receiving a fee when an estate closes is a powerful incentive to encourage a PR to get the estate closed. Were the Court to authorize early payments …, this incentive would be lost. This Court desires to keep this incentive in place. The Court considers the amended petition for fees. The personal representative is authorized to pay himself an advance of PR fees in the amount of $15,000. This amount shall be deducted from the final calculation of fees due him at the close of the estate.

[2] Citations are to RSMo 2000 unless otherwise indicated.

2

1965).[3]  This misconduct harmed the integrity of the legal profession and the probate process and, therefore, warrants an actual, indefinite suspension with no leave to apply for reinstatement for six months.

The ABA standards for imposing sanctions support this conclusion.  Mr. Gardner knowingly removed funds from his client's estate for payment of personal representative fees after the circuit court specifically denied his request to receive payment before the estate was closed.  Rule 4-3.4(c) states in pertinent part, "A lawyer shall not … knowingly disobey an obligation under the rules of a tribunal …."  The ABA standard for violating Rule 4-3.4(c), titled "Abuse of the Legal Process," states in pertinent part, "Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and … causes interference or potential interference with the legal proceeding."  ABA Standard 6.22.

The circuit court's order made it clear the court had no intention of awarding the remainder of Mr. Gardner's fee until the final settlement was filed.  Nevertheless, and in direct contradiction to the order, Mr. Gardner paid himself the remainder of his fee before the estate was closed, and he did not disclose the payment in the final settlement, interfering with the probate proceeding and causing damage to the integrity of the legal profession and the probate process.

---

[3]  In *Rose*, this Court affirmed the revocation of a physician's medical license because the local practice of writing false prescriptions to obtain drugs to keep as supplies in a physician's bag did not justify the writing of knowingly false prescriptions.  397 S.W.2d at 577.  Similarly, the local practice of paying oneself a personal representative fee before filing a final settlement cannot justify doing so in violation of § 473.153.6 and a circuit court order.

3

This Court takes seriously misconduct in the handling of a probate estate. In the case of *In re Charron*, 918 S.W.2d 257, 261 (Mo. banc 1996), an attorney, serving as personal representative of a probate estate, failed to file a final settlement before paying himself a personal representative fee and $20,000 owed to him by the decedent on an unrelated promissory note. *Id*. at 259. These payments were not approved by the circuit court and violated state law.[4] *Id*. at 259–60. This Court held the most serious misconduct was the payment of $20,000 owed to him by the decedent on the promissory note without court approval. *Id*. at 262. Although the attorney in *Charron* was actually entitled to the money he paid himself, this Court still found the attorney's misconduct warranted suspension with leave to apply for reinstatement in one year. *Id*.

Similarly, in this case, Mr. Gardner took money from an estate without court approval and in violation of state law. However, Mr. Gardner's misconduct is more egregious because he took the money in violation of the circuit court's express order stating Mr. Gardner was not entitled to the remainder of his personal representative fee until the close of the estate. Even though Mr. Gardner had a legitimate claim to the money, an actual suspension is the appropriate sanction as it was in *Charron* because Mr. Gardner took the money in violation of a state statute and in knowing violation of the circuit court's order.

ABA standards 9.22 and 9.23 set forth mitigating and aggravating factors to consider when imposing lawyer sanctions. Aggravating factors, in this case, include

---

[4]  The attorney's payment to himself on the promissory note violated § 473.423, which requires the appointment of an administrator ad litem when the personal representative is also a creditor of the estate.

Mr. Gardner's refusal to acknowledge his misconduct by insisting what he did was not wrong, substantial experience in the practice of law, failure to disclose the early payment until it was discovered, and a selfish motive. Although the principal opinion concludes Mr. Gardner did not act with a selfish motive in taking the remainder of his fee before final settlement of the estate, Mr. Gardner recognized an obvious financial benefit by taking the entire personal representative fee before the estate closed even though he acted with the belief it would lower the estate's tax liability. These aggravating factors, alone, warrant an indefinite suspension.

In addition to these aggravating factors, it is also significant Mr. Gardner accepted an admonition in 2011 for failing to reasonably communicate with his client about a settlement offer and failing to act with reasonable diligence in closing an estate. The principal opinion downplays the significance of the admonition even though it arose from the mishandling of another probate matter. These prior acts suggest an indefinite suspension would better protect the public and maintain the integrity of the legal profession.

Furthermore, while the mitigating factors cited in the principal opinion may justify a shorter period of suspension, a departure from the baseline sanction of an actual suspension is unwarranted because Mr. Gardner knew he was violating the circuit court's order when he paid himself the remainder of his fee before the estate closed. Anything less than an actual, indefinite suspension suggests this Court tolerates lawyers knowingly violating court orders and will undoubtedly damage the public's perception of the legal profession.

5

Accordingly, because Mr. Gardner knowingly violated the circuit court's order when he paid himself the remainder of his personal representative fee before the estate closed, I would recommend this Court suspend Mr. Gardner from the practice of law indefinitely with no leave to apply for reinstatement for six months.

_____

W. Brent Powell, Judge